Argued and submitted February 6, affirmed July 23,
petition for rehearing denied October 28, dissent to
denial (290 Or 137, 619 P2d 212) November 4, 1980

### ALEXANDERSON,
*Petitioner,*

*v.*

### BOARD OF COMMISSIONERS
### FOR POLK COUNTY,
*Respondent.*

### (TC 25142, CA 13226, SC 26628)

616 P2d 459

Alvin Alexanderson, Salem, argued the cause and
filed a brief pro se.

Dennis McCaffrey, Polk County Legal Counsel, Dallas, argued the cause and filed a brief for respondent.

LINDE, J.

## LINDE, J.

The issue for decision is whether Polk County unlawfully denied petitioner's application for an otherwise proper partition of his 25-acre tract of land on the ground that the partition would contravene a statewide planning goal promulgated by the Land Conservation and Development Commission ("LCDC").

The land in question qualifies as agricultural land within the definition of LCDC's Goal 3, relating to the preservation of such land for agricultural use.[1] At the time of the application it was used primarily as cherry orchard and was qualified for property tax assessment limited to farm use. ORS 308.370. The tract is located within an area designated by the Polk County Comprehensive Plan as "rural residential" and is zoned for "agricultural-residential" use with 5-acre minimum lot size.

Petitioner applied to the county for permission to partition the tract into three lots, pursuant to Polk County's subdivision ordinance. Ord # 118 (May 1, 1974) § 6. The county planning director and, on appeal, the Board of Commissioners disapproved the

---

[1] Goal 3, "Agricultural Lands," provides in part:

"Agriculture lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space. These lands shall be inventoried and preserved by adopting exclusive farm use zones pursuant to ORS Chapter 215. Such minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise within the area.

. . . .

"AGRICULTURAL LAND in western Oregon is land of predominantly Class I, II, III and IV soils . . . "

OAR 660-15-000(3) (Appendix A). The county found that petitioner's land falls predominantly into soil classes II and III.

partition as inconsistent with statewide land use standards.[2] In proceedings upon a writ of review, the circuit court vacated the Board's order and ordered approval of the proposed partition. On the county's appeal, the Court of Appeals reversed the circuit court, 42 Or App 618, 601 P2d 139 (1979), and we allowed review. We affirm the decision of the Court of Appeals.

The problem arises from the interplay between the county's exercise of its authority over subdivisions and partitions under ORS chapter 92, and the statewide standards that govern the exercise of its planning responsibilities under ORS chapters 197 and 215. With respect to the partition of a tract of land, which ORS 92.010(8) defines as its division into two or three parcels within a calendar year, the law distinguishes between a "major" partition, which includes the creation of a road or street, and a "minor" partition, which does not. ORS 92.010(2), (4). This case involves a minor partition. Under chapter 92, the county "shall" adopt standards for the approval of major partitions, ORS 92.044; it "may" adopt standards for the approval of minor partitions. ORS 92.046. If it does regulate minor partitions, such a partition must comply with the applicable ordinances, which in turn must comply with the county's comprehensive plan. ORS 92.046(5), (6).

Under chapter 215, the county is required to adopt "zoning, subdivision and other ordinances applicable to all of the land in the county" that are "designed to implement the adopted county comprehensive plan." ORS 215.050(1), (2). With the adoption of ORS chapter 197 and of statewide planning goals, the statutes allowed a one-year period after the goals were

---

[2] The Board's order found as a fact that the land "has no existing structures; it is likely that partitioning would lead to construction of residences on each of the resulting parcels," and it stated as a conclusion of law that "[a]pproval of the request to partition the land would violate statewide planning goal 3 and the exclusive farm use statutes set forth in ORS Chapter 215." Only the applicability of Goal 3 was pursued on judicial review.

approved by LCDC under ORS 197.240 within which to bring the comprehensive plan and the ordinances and regulations into conformity with the goals. ORS 215.050(3), ORS 197.250.

The law prescribes procedures for LCDC to determine whether comprehensive plans or zoning, subdivision, or other ordinances or regulations comply with the goals, or to provide limited extensions of time for bringing them into compliance. ORS 197.251. The changed legal status of these local land use policies before and after this determination of compliance is important to the present case. ORS 197.275 provides:

"(1) Comprehensive plans and zoning, subdivision, and other ordinances and regulations adopted prior to October 5, 1973, shall remain in effect until revised under ORS 197.005 to 197.430 and 469.350. It is intended that existing planning efforts and activities shall continue and that such efforts be utilized in achieving the purposes of ORS 197.005 to 197.430 and 469.350.

"(2) After the commission acknowledges a city or county comprehensive plan and implementing ordinances to be in compliance with the goals pursuant to ORS chapter 197 and any subsequent amendments to the goals, the goals shall apply to land conservation and development actions and annexations only through the acknowledged comprehensive plan and implementing ordinances unless:

"(a) The acknowledged comprehensive plan and implementing ordinances do not control the action or annexation under consideration; or

"(b) Substantial changes in conditions have occurred which render the comprehensive plan and implementing ordinances inapplicable to the action or annexation.

"(3) . . . "

Polk County's comprehensive plan and land use regulations have not completed this process of acknowledgment. However, the county adopted a policy, expressed in a Board resolution, that during the transition period

it would apply the statewide planning standards directly to individual requests for partitions.

Petitioner relies on the continued effectiveness of the county's existing plan, ordinances and regulations pending their acknowledgment by LCDC, ORS 197.275(1), *supra,* and contends that the county is bound to judge his proposed partition under its subdivision ordinance until it is properly revised or amended. This contention has merit unless the county is right in superimposing the statewide goals on individual decisions under the ordinance. The question is whether the legislature meant this to be done.

The county relies on ORS 197.175, which directs cities and counties to "exercise their planning and zoning responsibilities" in accordance with state laws and statewide planning goals. It interprets this to mean that, because the adoption of comprehensive plans and zoning and subdivision ordinances is a planning and zoning responsibility, ORS 197.175(2), each individual decision under such an ordinance is equally an exercise of that responsibility. Standing alone, however, ORS 197.175 does not strike us as conclusive on the question, especially when ORS 92.046 leaves it to the county's discretion whether to regulate minor partitions at all. ORS 197.175 alone could equally be read to reflect a legislative division between statewide and local responsibilities that would test large-scale local policies—planning, zoning and subdivision ordinances, as well as annexations—against statewide goals, thereafter leaving individual cases to be decided under the local ordinances. *Cf. Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 14-15, 569 P2d 1063 (1977). However, there are other indications of the legislative policy.

When a local government requires an extension of time to comply with the goals, ORS 197.252 authorizes LCDC as part of a compliance schedule "to direct the city or county to apply specified goal

requirements in approving or denying future land conservation and development actions if the commission finds that past approvals or denials would have constituted violations of the state-wide planning goals. . . ." The cryptic choice of the conditional phrase "would have," without stating what condition is meant, requires explanation. It is found in the legislative history of the section.

The legislative history shows that in the major reexamination and revision of the land use laws in 1977, the question whether the state-wide planning goals did or did not apply directly to individual "land conservation and development actions" was a major point of contention between witnesses who favored and those who were critical of LCDC's statewide authority over land use. The applicability of the goals to individual "actions" grew into a crucial issue when it became clear that satisfactory local comprehensive plans could not be completed in one year but would take several years. The issue had not been decided under the existing law. Moreover, while the legislature was in session, LCDC published its policies for attaching conditions to planning grants and to the extensions of the time allowed local governments for completing their plans. In this setting, there were proposals to have the 1977 legislation expressly affirm that state-wide goals govern "actions" directly until a comprehensive plan was completed and acknowledged, and proposals to have it expressly negate this. All such amendments failed. What emerged from the committee discussions instead was consensus to leave the law on the issue as it was, whatever that might be. The phrase "would have constituted violations of the state-wide planning goals" was placed in ORS 197.252, somewhat elliptically, to mean "would have" assuming the goals applied. If ever legislative history shows the enactment of a statute with a firm purpose not to legislate on an issue, the history of ORS 197.252 is it.

Thus the question whether the state-wide goals would govern "land conservation and development actions" after the expiration of the time allowed to bring local plans into compliance with the goals stands where it stood before the 1977 legislation. At that time, and at the time relevant to the present case, LCDC was authorized to review any "land conservation and development action" alleged to conflict with the statewide goals. ORS 197.300(1)(b) (1977).[3] Also ORS 197.275(2), quoted above, provides that *after* a compliance acknowledgment, "the goals shall apply to land conservation and development actions . . . only through the acknowledged comprehensive plan and implementing ordinances." The implication is that before acknowledgment, the goals apply to such actions not only in this indirect way but directly.

Although ORS 197.015 contains a list of definitions, the statute nowhere defines the key term "land conservation and development action." We read "action" in this context to go beyond the adoption of plans and general ordinances so as to reach action on applications of these general policies to specific tracts of land. This includes minor partitions if the local government has brought them within its subdivision ordinance. LCDC has included the partition of land in its definition of "development," OAR 660-15-000 (Appendix A). Accordingly, we conclude that Polk County

---

[3] In 1979 this section was replaced by the authority of the newly established Land Use Board of Appeals to review "land use decisions," defined to include a decision by a county concerning the "application of . . . [a] subdivision or other ordinance that implements a comprehensive plan." 1979 Or Laws c 772 §§ 1-6a, 26.

. The dissent would interpret ORS 197.300(1)(b) as delegating to LCDC authority to "require" application of the goals to land use decisions, and to do so only upon a petition by a governmental entity. However, we conclude that this section did not delegate discretionary authority to LCDC but rather "review" of "land conservation and development action[s]" for compliance with an existing obligation to observe the goals. The requirement of a petition by a governmental entity was designed only to limit the parties who had standing to initiate LCDC's review (as distinguished from judicial review in circuit courts).

followed the statutory scheme in applying the statewide agricultural lands goal to partitions under its subdivision ordinance.

In the circuit court and in the Court of Appeals, petitioner contended that the Board erred in concluding that his proposal was incompatible with this goal or with a proper consideration of all applicable goals. The circuit court agreed. The Court of Appeals wrote no opinion besides citing its earlier opinion in *Jurgenson v. Union County Court,* 42 Or App 505, 600 P2d 1241 (1979), which held a partition subject to Goal 3. As often happens, we are left to infer that it rejected petitioner's contention and the circuit court's conclusion on this issue in reversing the decision below. The petitioner has not pursued the merits of the issue in this court, relying only on his position that the county should not have applied the goal at all. Since we have reached a contrary conclusion, the decision of the Court of Appeals is affirmed.

Affirmed.

**TONGUE, J.,** Dissenting.

In my opinion the holding by the majority in this case is not only contrary to the applicable law, but also creates an untenable situation for those persons who seek approval from a planning commission or board of commissioners to partition their property. This is particularly true in this case in which the application by this petitioner appears to have satisfied all requirements of the Polk County comprehensive plan and zoning ordinances. I must, therefore, respectfully dissent.

I. *State law does not require that counties directly apply the state-wide planning goals to applications for approval of minor partitions which satisfy requirements of existing comprehensive plans and zoning ordinances.*

Petitioner is the owner of 25 acres of land in Polk County. The tract includes a cherry orchard, together with some hay and pasture land. He sought to partition that tract into three smaller parcels. At the time of the application by petitioner for approval of that partition, the Polk County comprehensive plan designated the area as "rural residential," and the 25-acre tract was zoned "agricultural-residential," with a 5-acre minimum lot size.

In addition, according to the trial testimony of E. Frank Wyckoff, the county planning director, requests for minor partitions prior to December 1977 were handled under the county's subdivision ordinance through a relatively simple administrative procedure. Applicants had to secure the approval of the county road master (checked access), the county surveyor (checked lot sizes and survey accuracy), the county sanitarian (checked septic approval) and the county planning director.

On December 28, 1977, the Polk County Board of Commissioners changed these rules by the passage of Resolution No. 325. Thereafter, applicants were further required to show that the partition "will conform to the state-wide planning goals adopted by the Oregon Land Conservation and Development Commission." (LCDC). As a result of Resolution No. 325, not only were the substantive requirements changed, but the procedures for obtaining approval of a partition were also changed. The county planning department began taking "full applications"; adjacent land owners had to be notified, and soil analyses conducted to determine the type of agricultural soil present.

Thus, by resolution, without either the adoption of any ordinance or the amendment of its existing comprehensive plan or zoning ordinance, Polk County changed the substantive and procedural rules for minor partitions.

Petitioner was faced with these new barriers when on February 21, 1978, he filed his request for

approval of a partition of his property. As stated by the majority, that request was denied by the planning department and the board of commissioners because, in their view, it contravened LCDC's Goal 3, relating to the preservation of agricultural lands.[1]

The majority concludes, after a review of the applicable statutes and their legislative history, that by "implication" those statutes require that the state-wide planning goals must be applied directly to applications for approval of individual partitions and that Polk County followed that "statutory scheme" in applying the state-wide agricultural lands goal (goal 3) to petitioner's application for approval of this partition. In my view, however, a review of this "statutory scheme" not only leads to the opposite conclusion but also illustrates the problems encountered by courts which embark upon searches for legislative "implication" or "policy" as the basis for defining legislative intent.

Cities and counties in this state are required to adopt comprehensive plans for land development. ORS 215.050 and 197.175(2). ORS 197.175(1) provides in part:

> "Cities and counties shall exercise their planning and zoning responsibilities * * * in accordance with ORS 197.005 to 197.430 and 469.350 and the state-wide planning goals approved under ORS 197.005 to 197.430 and 469.350."

As stated by the majority, the county contends that this statute required it to apply LCDC Goal 3 to individual partition decisions. The majority properly concludes that this statute "does not strike us as conclusive on the question." The reason why that statute is not "conclusive" is that it is clearly not applicable. The reference in that statute to "planning and zoning responsibilities" is a reference to the adoption of comprehensive plans, ordinances and regulations, not to

---

[1] See majority opinion, note 1.

individual decisions regarding minor partitions. This is made clear by other statutes including ORS 197.275(2) which provides that:

"After the commission acknowledges a city or county comprehensive plan and implementing ordinances to be in compliance with the goals pursuant to ORS Chapter 197 and any subsequent amendments to the goals, the goals shall apply to *land conservation and development actions* and annexations *only through the acknowledged comprehensive plan and implementing ordinances* \* \* \*." (Emphasis added)

Thus, although the legislature did not define either "planning and zoning responsibilities" or "land conservation and development actions," it is clear that the legislature intended to make a distinction between broad "legislative" functions on one hand and individual "actions," such as partitions, on the other. This distinction is implicitly recognized by the majority in its conclusion that "land conservation and development actions" go "beyond the adoption of plans and general ordinances so as to reach action on applications of these general policies to specific tracts of land."

Because, in this case, the comprehensive plan prepared by Polk County had not yet been acknowledged by LCDC, the question presented by this case is whether the county must directly apply the state-wide planning goals to each individual "land conservation and development action" during the interim period preceding such acknowledgment.

As previously stated, ORS 197.275(2) requires that the goals only apply indirectly through the comprehensive plan once that plan is acknowledged. Prior to acknowledgment, two other statutes (ORS 197.252 and 197.300(1)(b)) granted LCDC the *authority* to require that a particular "action" conform with the goals. These statutes do not, however, require that a county directly apply the goals *unless LCDC has exercised its authority to require such action,* as the following discussion will demonstrate.

Counties and cities are required to develop comprehensive plans that conform to the state-wide planning goals "within one year from the date such goals are approved by the commission." ORS 197.250. If, however, as in this case, a county fails to complete its plan within this one-year period it may request an extension of time to to so. ORS 197.251.

If LCDC grants the extension, that extension will include a "compliance schedule" which may include a requirement that the county directly apply the state-wide planning goals to individual "actions." ORS 197.252 states in part:

"(1) Even if a city or county has not agreed to a condition in a compliance schedule under ORS 197.251, *the commission may condition the compliance schedule for the city or county to direct the city or county to apply specified goal requirements in approving or denying future land conservation and development actions* if the commission finds that past approvals or denials would have constituted violations of the state-wide planning goals and:

"(a) The commission finds that the past approvals or denials represent a pattern or practice of decisions which make continued utilization of the existing comprehensive plan, ordinances and regulations ineffective in achieving the state-wide planning goals through performance of the compliance schedule; or

"(b) The commission finds that a past approval or denial was of more than local impact and substantially impairs the ability of the city or county to achieve the state-wide planning goals through the performance of the compliance schedule. (Emphasis added)

"* * * * *"

The majority makes much of the ambiguities in this statute pertaining to the "conditions" under which LCDC may require that a county "apply specified goal requirements in approving or denying future land conservation and development actions." In my opinion, however, any such ambiguity is not rele-

vant to this case. Instead, the relevant question under this statute (ORS 197.252) is whether LCDC has included in Polk County's "compliance schedule" any requirement that the county directly apply all or some of the state-wide planning goals to future individual "land conservation and development actions." The answer, of course, is that LCDC has not included any such requirement for Polk County.

The other statute that authorized LCDC to require that a specific "land conservation and development action" comply directly with the state-wide planning goals was ORS 197.300(1)(b) (repealed, 1979 Or Laws c 772 § 26). That statute provided:

"(1) In the manner provided in ORS 197.305 to 197.315, the commission shall review upon:

"* * * * *

"(b) *Petition* by a city, county, special district governing body, or state agency, a land conservation and development action taken by a state agency, city, county or special district that the governing body or state agency considers to be in conflict with state-wide planning goals approved under ORS 197.240. (Emphasis added)

"* * * * *"

Once again, this statute at most requires LCDC to require direct application of the state-wide planning goals to individual "actions" upon the filing of such a petition.

It is from these statutes that a majority concludes that the court should, by "implication," require counties to directly apply the LCDC goals to all individual "land conservation and development actions," including minor partitions.

With all due respect, it is my opinion that these statutes imply no such conclusion. On the contrary, in my opinion, these statutes "imply" quite the opposite conclusion: that a county is to continue to apply its existing ordinances and regulations until such time as its comprehensive plan is acknowledged

unless LCDC has issued a specific order requiring that the county directly apply certain state-wide planning goals to individual "actions."

Not only is such a result the clear intent of the statutes involved, in my opinion, it is a sensible result as well. State-wide planning objectives necessarily require that counties and cities adhere to common goals and that local decisions are not to be made contrary to such goals. On the other hand, both the public in general and owners of land, in particular, are entitled to know with reasonable certainty whether a county will permit or deny particular land uses.

The essence of land use planning is planning, not ad hoc decision making. The LCDC goals are in the nature of guidelines for legislation (comprehensive plans and ordinances) and not rules to be directly applied on an ad hoc (a case by case) basis. Where, however, a county or city chooses to ignore some or all of the goals, the law (ORS 197.252 and 197.300(1)(b)) provided a remedy whereby LCDC could step in and require compliance. In the absence of such action counties and cities were required to regulate land use by the application of their own local ordinances and, once acknowledged, through their own comprehensive plan.[2]

II. *The "resolution" passed by the Board of Commissioners did not properly authorize the county to apply LCDC goals directly to individual requests for partitions.*

In the absence of a state law requiring direct application of LCDC goals, the county's "action" must rest upon the authority of local county law.

---

[2] In 1979 the legislature repealed ORS 197.300 and created the Land Use Board of Appeals to review "land use decisions" defined to include the "application of" the state-wide planning goals, comprehensive plan or zoning, subdivision or other ordinance that implements a comprehensive plan. 1979 Or Laws c 772 §§ 1 - 6a and 26. As with ORS 197.300, review of individual "actions" or "applications of" a comprehensive plan or ordinance is limited to cases where a petition has been filed with the Board. (§ 2a(1)).

ORS 92.046 provides that counties "may" regulate minor partitions and, further, that counties "may" also "establish standards and procedures governing the approval of tentative plans for such partitions." (subsection (1)). Such "tentative plans" must also comply with the applicable zoning ordinances (subsection (5)). In addition, any ordinances or regulations passed relating to minor partitions of land must comply with the county's comprehensive plan (subsection (6)).[3]

---

[3] ORS 92.046 provides:

"(1) The governing body of a county or a city may, as provided in ORS 92.048, when reasonably necessary to accomplish the orderly development of the land within the jurisdiction of such county or city under ORS 92.042 and to promote the public health, safety and general welfare of the county or city, adopt regulations or ordinances requiring approval, by the county or city of proposed partitions not otherwise subject to approval under a regulation or ordinance adopted pursuant to ORS 92.044. Such regulations or ordinances may be applicable throughout the area over which the county or city has jurisdiction under ORS 92.042, or over any portion thereof. Such ordinances or regulations may specify the classifications of such partitions which require approval under this section and may establish standards and procedures governing the approval of tentative plans for such partitions. The standards may include all, or less than all, of the same requirements as are provided or authorized for subdivisions under ORS 92.010 to 92.160 and may provide for different standards and procedures for different classifications of such partitions so long as the standards are no more stringent than are imposed by the city or county in connection with subdivisions.

"(2) Such ordinances or regulations may establish the form and contents of the tentative plans of minor partitions submitted for approval and may establish adequate measures for the central filing, including but not limited to recording with the city recorder or the county recording officer, and for the maintenance of tentative plans for minor partitions following approval.

"(3) The governing body of a city or county may provide for the delegation of any of its lawful functions with respect to minor partitions to the planning commission of the city or county or to an official of the city or county appointed by the governing body for such purpose. If an ordinance or regulation adopted under this section includes the delegation to a planning commission or appointed official of the power to take final action approving or disapproving a tentative plan for a minor partition, such ordinance or regulation shall also provide for appeal to the governing body from such approval or disapproval and require initiation of any such appeal within 10 days after the date of the approval or disapproval from which the appeal is taken.

In addition, ORS 92.048 provides that such ordinances and regulations may only be enacted or amended after a public hearing before the planning commission and a subsequent hearing before the governing body of the county. The statute further provides procedures for published notice of such hearings.[4]

"(4)  The governing body may, by ordinance or regulation, prescribe fees sufficient to defray the costs incurred in the review and investigation of and action upon applications for approval of proposed minor partitions.

"(5)  No tentative plan of a proposed minor partition may be approved unless the tentative plan complies with the applicable zoning ordinances and regulations and the ordinances or regulations adopted under this section that are then in effect for the city or county within which the land described in the tentative plan is situated.

"(6)  Any ordinance or regulation adopted under this section shall comply with the comprehensive plan for the city or county adopting the ordinance or regulation."

[4] ORS 92.048 provides:

"The procedure for adoption of any ordinance or regulation under ORS 92.044 ·and 92.046 is as follows:

"(1)  The planning commission of the county or the city shall hold a public hearing on the proposed ordinance or regulation after publishing notice of the hearing once a week for two successive weeks prior to the hearing in a newspaper of general circulation published in the area in which land to be subject to such ordinance or regulation is situated or, if there is no such newspaper, a newspaper of general circulation published in the county. The notice shall contain the time, place and purpose of the hearing and a description of the land to be subject to the ordinance or regulation.

"(2)  Prior to the expiration of 60 days after the date of such hearing, the planning commission may transmit its recommendation regarding the proposed ordinance or regulation to the governing body of the county or city, as the case may be. If the planning commission recommendation has not been received by the governing body of the county or the city prior to the expiration of such 60-day period, the governing body may consider the ordinance or regulation without recommendation of the planning commission thereon.

"(3)  Prior to the adoption of such ordinance or regulation, the governing body of the county or the city shall hold a hearing thereon after giving notice of the hearing in the same manner provided in subsection (1) of this section.

Polk County has adopted a subdivision ordinance that also governed minor partitions (Ordinance No. 118). That ordinance was presumably enacted under the procedures prescribed in ORS 92.048, quoted above.

As recognized by the majority, the Board of Commissioners passed a "resolution" declaring its intention to apply the state-wide planning goals to future individual requests for partitions. The record in this case does not disclose whether that "resolution" was passed pursuant to the requirements of ORS 92.048(5) relating to amendments of partition ordinances or regulations. We must assume, however, that this "resolution" was not so enacted, as contended by the petitioner in the circuit court, because the county failed to deny that contention before this or any court or to contend that it was empowered by *local law,* as opposed to state law, to directly apply the state-wide planning goals to petitioner's request for a partition.

For the reasons previously stated, it is my opinion that the legislature did not intend that the state-wide planning goals be directly applied to individual "land conservation and development actions," particularly minor partitions, except in cases in which LCDC had issued orders as provided by ORS 197.252 and 197.300(1)(b). In addition, it is my opinion that it

---

"(4) A copy of any regulation or ordinance adopted by the governing body of a county or a city under this section, together with a map of the area subject to the regulation or ordinance and a brief statement of the different classifications, if any, of land partitioning under the ordinance or regulation, shall be filed with the recording officer of the county in which the land subject to the ordinance or regulation is situated. Such ordinance or regulation shall not be effective until so filed. If the ordinance or regulation is applicable throughout all of the area over which the county or city has jurisdiction under ORS 92.042, only an outline map of such area shall be filed with the recording officer of the county.

"(5) The ordinance or regulation may be amended from time to time by following the procedure prescribed in this section."

was clearly improper for a county to suddenly decide by resolution, without the notice or public hearing as required by ORS 92.048, that individual requests for partitions will be subject to a new set of rules.

LENT, J., and PETERSON, J., concur in this dissenting opinion.