On petition for rehearing denied October 28, dissent filed November 4, 1980

# ALEXANDERSON,
*Petitioner,*
*v.*
# BOARD OF COMMISSIONERS
# FOR POLK COUNTY,
*Respondent.*
## (NO 25142, CA 13226, SC 26628)
619 P2d 212

On Petition for Rehearing, filed August 11, 1980. *

Alvin Alexanderson, Salem, pro se.

Dennis McCaffrey, Polk County Legal Counsel, Dallas, contra.

Rehearing denied October 28, 1980.

---

* *Alexanderson v. Polk County Commissioners,* 289 Or 427, 616 P2d 459 (1980).

**TONGUE, J.,** dissenting.

This is a case in which plaintiff sought to partition land in accordance with the Polk County zoning ordinance and comprehensive plan. The county denied the application, however, stating that although the application complied with the ordinance and plan, it contravened statewide planning goal 3. On appeal plaintiff contended that he had a right to rely upon the existing ordinance and plan, and that the statewide planning goals were not intended to be applied directly to requests for partitions. This court held that the county was correct in directly applying the statewide goal to plaintiff's application for a partition, despite plaintiff's compliance with the ordinance and plan, since by "implication" it found legislative intent that prior to LCDC acknowledgment of comprehensive plans and ordinances, the statewide goals are to govern "land conservation and development actions." *See Alexanderson v. Polk County Commissioners,* 289 Or 427, 616 P2d 459 (1980). Upon the discovery of legislative history not considered by this court in its initial opinion, plaintiff filed a petition for rehearing, which this court now denies.

I must respectfully dissent from the denial by the majority of plaintiff's petition for rehearing. In my opinion, plaintiff has called to this court's attention two new and important reasons why this court's prior decision in this case was wrong and should be reheard. First, he has correctly pointed out that one of the two statutory grounds upon which the majority opinion is based is invalid by the majority's own analysis. Second, he has presented to this court legislative history that clearly indicates that LCDC statewide planning goals are not to be applied directly to applications for partitions. These two new considerations, together with the reasons noted in my previous dissent, compel rehearing of this case, in my opinion.

1. *Plaintiff's contention that one of the two grounds upon which the majority opinion is based is invalid by the majority's own analysis.*

The majority's opinion rests upon implications found by it in two sections of ORS Chapter 197: ORS 197.300(1)(b) and ORS 197.275(2). As pointed out by plaintiff, however, in his petition for rehearing, the majority

opinion's reliance on ORS 197.275(2) is invalid by its own analysis.

The majority noted that in 1977 the legislature undertook a major reexamination and revision of the state's land use laws. During this revision the legislature considered the question of whether the statewide planning goals did or did not directly apply to land conservation and development actions prior to acknowledgment of comprehensive plans. The majority stated that the result was to leave the law as it was, noting:

> "If ever legislative history shows the enactment of a statute with a firm purpose not to legislate on an issue, the history of ORS 197.452 is it." 289 Or at 432.

The majority then concluded that the question of the direct application of the statewide goals to land conservation and development actions stood "*where it stood before the 1977 legislation.*" (Emphasis added)

ORS 197.275(2), upon which the majority relied, however, was enacted during that 1977 session. Prior to that time the language upon which the majority draws its implication did not appear in the statute. Adhering to the majority opinion's own conclusion that the legislature's intent prior to 1977 must govern resolution of the issue, the majority's reliance on ORS 197.275(2) must be rejected.

Although rejection of the majority's reliance on ORS 197.275(2) does not invalidate the entire majority opinion, it seriously weakens the validity of that opinion by removing one of the two grounds relied upon by the majority as its basis for its "implication" of legislative intent and thus provides a substantial reason for a rehearing. In addition, for the reasons previously noted in my dissent,[1] I continue to believe that the majority's interpretation of ORS 197.300(1)(b), the other provision upon which it rests its decision, is also invalid and that its invalidity is further demonstrated by the legislative history next discussed.

---

[1] See 289 Or at 440.

2. *The new legislative history is not only relevant, but persuasive, in demonstrating that the majority opinion was in error in its "implication" of legislative intent.*

A. *The new legislative history.*

The legislative history relied upon by plaintiff in his petition for rehearing, together with plaintiff's contentions based upon that legislative history (with which I fully agree), are as follows:

"The 1973 Legislature also passed a companion bill, SB 487, which generally required counties to regulate parcelization in conformity with their comprehensive plans. 1973 OL, Ch 696. This bill, in Section 10, amended ORS 92.046 to provide the following new provision dealing with minor partitions:

" 'No tentative plan of a proposed minor partition may be approved unless the tentative plan complies with the applicable zoning ordinances or regulations adopted under this section that are then in effect for the city or county within which the land described in the tentative plan is situated.'

"In another section of the same bill, similar language was used regarding approval of major partitions and subdivisions, but with one crucial difference, later to be described by Senator McPherson as a 'drafting error': subdivisions and major partitions had to comply with ordinances *and* with the comprehensive plan. 1973 OL Ch 696 § 16.

"When the 57th Legislature reconvened in the 1974 Special Session, it passed SB 1011 (1974 OL, Ch 74), which eliminated the requirement that subdivisions and major partitions comply also with the comprehensive plan. Twice in this bill the words 'comprehensive plan' are deleted in connection with the requirements for approval of tentative plans for parcelization. § 2: § 3. To make it crystal clear that the goals do apply indirectly to parcelization, a new section (6) was added to ORS 92.044, stating that local ordinances must comply with the comprehensive plan. § 2. Attachment A to this Petition is a copy of 1974 OL, Ch 74 § § 1-3.

"The hierarchy was complete: tentative plans comply with ordinances, ordinances comply with comprehensive plans, and comprehensive plans comply with the goals. What happens and who was to suffer if there was a break in the chain was explained by Senator McPherson on the floor of the Senate just before SB 1011 was passed.

" 'The second was a very minor change which is actually a drafting error in the original bill [SB 487, 1973] and which you'll find on Page 4. You will find that we have the words 'the comprehensive plan' as deleted where we're talking about whether a tentative plan has to comply with the zoning ordinances. That is, the agreement in the committee, which originally drafted SB 487, was that a developer would have to comply with the ordinances; but in case the ordinances did not comply with the comprehensive plan, he shouldn't be held up for the fact that those two did not agree with one another.

" 'So we had drafted language which we thought was complete throughout the bill, which said that a developer complied *only* with the applicable ordinances; that is, the zoning ordinance or the subdivision ordinance. And so we wanted to delete the fact that the tentative plan had to comply also with the comprehensive plan.

" 'Now, elsewhere in law, we have said that the affected counties are to make their ordinances comply with the comprehensive plan. But this certainly should not be brought back onto the developer. (Original emphasis) Senate Floor Proceedings, February 23, 1974, Tape 5, Side 2, Log 435 approximately.'

"The amendment put minor partitions, major partitions and subdivisions all on equal footing, as originally intended by the 1973 Legislature. They are governed only by ordinances, even where the plan is in harmony with the goals, but the ordinances are not.

"It could not be clearer that the Legislature intended persons in Petitioner's shoes to be allowed to rely upon zoning and subdivision ordinances. The County's failure to straighten out its affairs was not intended to harm individuals."

It would appear that the majority would dismiss this new legislative history on the premise that it does not concern the proper application of ORS Chapter 197 upon which the original opinion relied in its finding of an "implication" of legislative intent in this case, but that this legislative history instead involves the proper application of ORS Chapter 92, which the majority did not rely upon in its prior opinion. I disagree with such a distinction. Although this case was decided by an interpretation of ORS Chapter 197 and not by an interpretation of ORS Chapter 92, I believe that the legislative history concerning ORS

Chapter 92 noted by plaintiff is not only relevant to a proper decision in this case, but is persuasive in demonstrating that the majority opinion was in error in its implication of legislative intent.

B. *ORS Chapters 92 and 197 must be read together.*

ORS Chapters 92 and 197 are closely related statutes and the legislative history of one is relevant to an interpretation of the other. The principal purpose behind the provisions of Chapter 92 relating to the subdivision and partition of land is to regulate land use planning, the same purpose behind ORS Chapter 197. The necessary interrelationship in the present case between the two statutes is even recognized by the majority opinion:

> "The problem [in this case] arises from the interplay between the county's exercise of its authority over subdivisions and partitions under ORS Chapter 92, and the statewide standards that govern the exercise of its planning responsibilities under ORS Chapters 197 and 215." 289 Or at 430.

This close relationship between ORS Chapters 92 and 197 is further evidenced by the legislative history of ORS Chapter 92 presented to this court by plaintiff. The specific legislative history primarily relied upon by the plaintiff occurred during a floor speech during the 1974 special session of the legislature and concerned a 1973 amendment to Chapter 92. Chapter 197, upon which the majority opinion rests its decision, was enacted in 1973, evolving from Senate Bill 100. Both bills (SB 100 and the amendment to Chapter 92) were originally introduced in the 1973 Senate Committee on Environment and Land Use. Senator McPherson, the person who made the floor speech now being presented as legislative history, was chairman of the ad hoc committee that formulated SB 100 and co-sponsor of that bill.

This setting for the legislative history reinforces the conclusion that the provisions of ORS Chapters 92 and 197 are interrelated and must be read together, as well as the conclusion that the legislative history of one is appropriate to an understanding of the legislative intent behind the other.

C. *The new legislative history directly addresses the specific issue presented in this case.*

The majority opinion decided this case by undertaking to decide the question whether counties must apply LCDC statewide goals directly to individual land conservation and development actions. The specific question presented by the case is more narrow: whether the statewide goals are to be applied directly by counties in considering individual applications for partitions that comply with the applicable local ordinances and comprehensive plans pending the approval of such plans by LCDC. The new legislative history is both relevant and persuasive on this specific issue for several reasons.

First, Senator McPherson clearly stated that applications for approval of partitions need comply only with the applicable ordinances. He mentions no other requirements that must be met. It is true that after stating that individual applications for partitions must comply only with local ordinances, Senator McPherson stated that such applications need not comply with comprehensive plans, while making no mention of the statewide goals. It might be argued that this indicates that the goals do apply and that the Senator's only concern was that comprehensive plans not apply. His reference to comprehensive plans is best understood, however, as simply addressing the specific problem the amendment was intended to cure: the erroneous inclusion of the words "comprehensive plan" in ORS 92.046(5). This in no way indicates a legislative intent to apply the goals directly to individual applications for partitions. What is important is that Senator McPherson clearly stated that individual applications for partitions need comply *only* with the local ordinances. Petitioner in this case did just that.

A second indication from the legislative history that tentative plans for minor partitions need comply only with the local ordinance is that the purpose of a rule requiring that applications for partitions comply only with existing ordinances and not with comprehensive plans would also apply to a contention that statewide goals must be applied directly in considering individual applications for partitions.

Senator McPherson stated:

"A developer would have to comply with the ordinances; but in case the ordinances did not comply with the comprehensive plan, *he shouldn't be held up for the fact that those two did not agree with one another.*" (Emphasis added)

This indicates that for reasons of predictability and certainty a property owner seeking to partition his land should be able to rely upon the existing local ordinance. Otherwise, a person who has sincerely attempted to comply with the existing ordinances might well be unfairly held up for failing to comply with a conflicting comprehensive plan. This same problem that concerned Senator McPherson with comprehensive plans and ordinances would be present to an even greater degree with statewide goals and ordinances, because LCDC "goals" are of an even more general nature than comprehensive plans. Thus, the most reasonable conclusion to be drawn from the stated purpose of the 1974 amendment is that the legislature also did not intend that a property owner seeking to partition his land be "held up" by possible contentions that his application did not comply with vaguely-worded LCDC "goals" when his application fully complied with the existing local ordinance.

A final and even stronger indication from the legislative history that the statewide goals were not intended by the legislature to be applied directly to applications for partitions is that Senator McPherson's floor speech and the amendment to ORS 92.044 were futile and useless if applications for partitions and subdivisions are to be ultimately governed by the statewide goals, as held by the majority. According to the majority opinion, the statewide goals are to "govern 'land conservation and development actions' " after the expiration of the time allowed in which to bring plans into compliance with the goals, and counties are to "superimpos[e]" the statewide goals on individual decisions under ordinances. 289 Or at 432,434. The logical conclusion to be drawn from the majority opinion is that it is the LCDC "goals" that are to be decisive in determining whether an application for a partition is approved or denied. Thus, if an applicant complies with the statewide goals but fails to comply with local ordinances, the partition must be approved, just as in the present case plaintiff's

compliance with the local ordinance, but failure to comply with the statewide goals, resulted in a denial of his application.

The holding by the majority that the statewide "goals" are to be applied directly in this manner makes both Senator McPherson's floor speech and the amendment to ORS 92.044 meaningless. If applications for partitions were intended by the legislature to be determined in this manner by reference to the LCDC "goals," there was no need to amend Chapter 92, because the statewide goals determined approval whether or not the application for partition complied with the local ordinance or comprehensive plan. The remarks made by the Senator on the floor of the Senate in support of a proposed amendment to make it clear that applications did not need to comply with comprehensive plans if they met ordinance requirements would have been completely unnecessary if the LCDC "goals" were to be applied directly in the approval process. The futility of the Senator's speech in such an event is made even more clear by the fact that he co-sponsored SB 100, the statute that is now held by the majority to require that the statewide goals govern individual applications for partitions.

The only way to give any meaning to Senator McPherson's floor speech and to the 1974 amendment to ORS 92.044 is to conclude that both the Senator and the legislature understood that although zoning ordinances were required to comply with comprehensive plans and such plans were required to comply with LCDC "goals," the LCDC "goals" were not to be applied directly to individual applications for partitions.

For these reasons, I believe that the legislative history now brought to the attention of this court is not only relevant to the specific issue in this case, but demonstrates a legislative intent that the statewide goals not be applied directly to applications for approval of partitions that comply with local ordinances. The fact that the legislative history concerns Chapter 92 and not Chapter 197 is irrelevant, because the two statutes are closely related, the facts of this case concern the application of both statutes, and the legislative history addresses the specific issue presented in this case.

As pointed out in my previous dissent, the practical result of requiring direct application of the statewide goals to individual land use actions is to make it difficult, if not impossible, for a landowner who desires to partition his property to know whether or not he can do so, and instead permits ad hoc decision making. Not only does this place such landowners in an intolerable position, but such a result is wholly inconsistent with the intention of the legislature as demonstrated by the legislative history of the 1974 amendment to ORS Chapter 92.

Because of the importance of the question presented in this case and the legislature's failure to indicate more clearly its intent on that question, the next legislative assembly should decide whether LCDC goals must be applied directly to proposals for partitions and subdivisions which satisfy provisions of existing zoning ordinances and comprehensive plans prior to LCDC approval of such plans and should then amend ORS Chapters 92 and 197 to clearly reflect its decision upon that important question.

For these reasons, I respectfully dissent from the denial of plaintiff's petition for a rehearing of this case.

Lent, J., and Peterson, J., join in this dissenting opinion.