Argued and submitted July 21,
motions to dismiss denied November 17, 1980,
reconsideration denied January 15,
petition for review allowed January 27, 1981 (290 Or 449)
See later issue Oregon Reports

OREGON BUSINESS PLANNING COUNCIL,
*Petitioner,*

*v.*

DEPARTMENT OF LAND CONSERVATION,
AND DEVELOPMENT,
*Respondent.*

(CA 16617)

RIVIERA MOTORS, INC.,
*Petitioner,*

*v.*

DEPARTMENT OF LAND CONSERVATION,
AND DEVELOPMENT et al,
*Respondents.*

(CA 17091)

1000 FRIENDS OF OREGON,
*Petitioner,*

*v.*

DEPARTMENT OF LAND CONSERVATION,
AND DEVELOPMENT et al,
*Respondents.*

CA 17093

619 P2d 1291

Kevin L. Hanway, Portland, appeared for petitioner Oregon Business Planning Council (CA 16617).

Diane W. Spies, Portland, argued the cause for petitioner Riviera Motors, Inc. (CA 17091).

Robert E. Stacey, Jr., Portland, argued the cause for petitioner 1000 Friends of Oregon (CA 17093).

Terry D. Morgan, Morgan & Shonkwiler, P. C., Portland, appeared as Parties Amicus (CA (17093).

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondents (CA 16617, 17091 and 17093). Appearing with him were James M. Brown, Attorney General, and Mary J. Diets, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton and Buttler, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

We have consolidated several cases on our own motion which have the following common denominators: (1) the petitioners have filed appeals from orders of the Land Conservation and Development Commission acknowledging various local land use plans to be in compliance with the statewide planning goals; (2) petitioners' appeals are premised on LCDC's acknowledgment orders being contested case orders subject to judicial review pursuant to ORS 183.482;[1] (3) LCDC has moved to dismiss the appeals; and (4) LCDC contends that its review of the comprehensive plans and implementing ordinances of local governments for compliance with the state goals is a form of rulemaking subject to judicial review pursuant to ORS 183.400.[2]

Under either theory this case is properly in this court. The real dispute is over the *scope* of this court's review and the nature of the record upon which that review is based. If LCDC's acknowledgment decision is reviewed as a contested case order, LCDC must forward to us the record developed before it, ORS 183.482(4), which we can examine to determine if the decision is supported by substantial evidence, ORS 183.482(8)(c). If, instead, LCDC's acknowledgment decision is reviewed as a rule, no evidentiary record is forwarded to us, ORS 183.335(12), 183.400(3), and there is thus no possibility of review for substantial evidence.[3]

We conclude that acknowledgment orders are subject to judicial review as contested case orders and, therefore, deny LCDC's motions to dismiss.

---

[1] ORS 183.482(1): "Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. * * *"

[2] ORS 183.400(1): "The validity of any rule may be determined upon a petition by any person to the Court of Appeals * * *."

[3] ORS 183.400(4) provides:

"The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

## I

The Administrative Procedures Act distinguishes between "rules" and "contested cases" as follows:

" 'Contested case' means a proceeding before an agency:

"(A)   In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard;

"(B)   Where the agency has discretion to suspend or revoke a right or privilege of a person;

"(C)   For the suspension, revocation or refusal to renew or issue a license where the licensee or applicant for a license demands such hearing; or

"(D)   Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.425, 183.450, 183.460 and 183.470." ORS 183.310(2)(a).

" 'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule * * *." ORS 183.310(7).

The APA creates different procedures in these two contexts. Rulemaking begins with notice to the public at large that is published in the Administrative Rules Bulletin published by the Secretary of State.[4] Certain detail is required in this notice, such as a "statement of fiscal impact," ORS 183.335(2)(a)(D), and a "statement of the need for the rule and a statement of how the rule is intended to meet the need," ORS 183.335(2)(a)(B). Agencies

---

[4] ORS 183.335(1)(b) requires an administrative agency to "give notice of its intended [rulemaking] action" in "the bulletin referred to in ORS 183.360." ORS 183.360(3) provides in part:

"The Secretary of State shall publish at least at monthly intervals a bulletin which:

"(a) Briefly indicates the agencies that are proposing to adopt, amend or repeal a rule, the subject matter of the rule and the name, address and telephone number of an agency officer or employe from whom information and a copy of any proposed rule may be obtained;

"* * * * *"

considering adopting rules must always consider written material submitted by interested persons but need not always hold a rulemaking hearing. "Opportunity for oral hearing shall be granted upon request received from 10 persons or from an association having not less than 10 members within 15 days after agency notice." ORS 183.335(3). If a rulemaking hearing is held, there is no formal presentation of evidence, cross-examination, etc.; instead, interested persons are only afforded an opportunity to make a "speech" type of presentation to the agency. If the agency then adopts a rule, it must file a copy with the Secretary of State.[5] The agency must also submit a copy of the rule to the Legislative Counsel Committee for review. ORS 183.710 to 183.725.

By contrast, contested case procedures contemplate adversary proceedings between "parties" that culminate in an adjudication called an "order."[6] Parties are entitled to personal, registered mail or certified mail notice of a contested case hearing. ORS 183.415(1). The detail required in the notice includes things like: "A short and plain statement of the matters asserted or charged." ORS

---

[5] ORS 183.355(1)(a): "Each agency shall file in the office of the Secretary of State a certified copy of each rule adopted by it." ORS 183.355(2) provides in part: "Each rule is effective upon filing as required by subsection (1) of this section * * *."

[6] ORS 183.310(5) provides:

" 'Party' means:

"(a) Each person or agency entitled as of right to a hearing before the agency;

"(b) Each person or agency named by the agency to be a party; or

"(c) Any person requesting to participate before the agency as a party or in a limited party status which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result. The agency's determination is subject to judicial review in the manner provided by ORS 183.482 after the agency has issued its final order in the proceedings."

ORS 183.310(4)(a) provides in part:

" 'Order' means any agency action expressed orally or in writing directed to a named person or named persons, other than employes, officers or members of an agency. 'Order' includes any agency determination or decision issued in connection with a contested case proceeding. * * *"

183.415(2)(d). Parties may take depositions[7] and subpena witnesses.[8] At a contested case hearing:

"Testimony shall be taken upon oath or affirmation of the witness from whom received. The officer presiding at the hearing shall administer oaths or affirmations to the witnesses." ORS 183.415(7).

"Every party shall have the right of cross examination of witnesses who testify and shall have the right to submit rebuttal evidence. * * *" ORS 183.450(3).

Contested cases are resolved by final orders:

"A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of concise statements of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order." ORS 183.470(2).

As presently conducted by LCDC, acknowledgment proceedings follow *neither* the rulemaking model *nor* the contested case model. Such a proceeding is initiated by the request of a city or county for acknowledgment of its comprehensive plan and implementing ordinances. ORS 197.251. LCDC then provides limited mailed notice.[9] So far

---

[7] ORS 183.425(1): "On petition of any party to a contested case, the agency may order that the testimony of any material witness may be taken by deposition in the manner prescribed by law for depositions in civil actions. * * *"

[8] ORS 183.440(1): "The agency shall issue subpenas to any party to a contested case upon request upon a showing of general relevance and reasonable scope of the evidence sought.* * *"

[9] OAR 660-03-015 provides:

"The Director of the Department shall establish procedures, subject to Commission review, for providing notice of the procedures and time limits for making comments or objections and of the locations where the acknowledgment request documents can be inspected by the general public and specifically the following:

"(1) Affected agencies and districts identified by the city, county or the Department;

"(2) The Local Officials Advisory Committee (LOAC) and the State Citizen Involvement Advisory Committee (CIAC);

"(3) The county or regional planning agency acting as the local coordination body pursuant to ORS 197.190;

"(4) The chairman of the local Committee(s) for Citizen Involvement and other citizen advisory committees identified in the acknowledgment request pursuant to subsection 660-03-010(2)(c);

"(5) Any other person(s) who have in writing requested notice."

as we are aware, LCDC does not publish notice of intended acknowledgment action in the Administrative Rules Bulletin. LCDC's mailed notice does not contain statements of need or fiscal impact, required for rulemaking; nor does it contain a statement of the matters asserted or charged, required for contested cases.

Interested persons have an opportunity to submit written comments and objections to LCDC.[10] LCDC's staff then prepares a written report which evaluates whether the local government's land use laws comply with the state goals.[11] There is no provision for requests for a rulemaking hearing by 10 or more persons. Rather, LCDC's rules cryptically provide: "Any interested person may appear before the Commission at the time of the Commission's consideration of the acknowledgement request." OAR 660-03-020(2). There are no provisions for discovery, subpenas, sworn testimony or cross-examination.

This acknowledgment process culminates in documents issued by LCDC that it calls orders, not rules, although such documents generally do not contain findings in exactly the form contemplated by the APA's definition of final orders in contested cases. There is no indication that these documents are filed with the Secretary of State or the Legislative Counsel Committee, as would be necessary if they were administrative rules.

The APA classifies all administrative procedures as rulemaking or contested cases. LCDC's approach to its acknowledgment process does not fit comfortably or entirely into either classification. This may document the concern of one administrative law expert: whether continuation of the "arbitrary distinction" between rulemaking and

---

[10] "Comments" are defined as: "* * * opinions, beliefs, or other information which a person wants [LCDC] to consider * * *." OAR 660-03-005(3). "Objections" are defined as: "* * * statements or positions by persons * * * opposing the granting of * * * [acknowledgment]." OAR 660-03-005(4).

[11] OAR 660-03-025(1) provides in part:

"When an acknowledgment request has been received by the Commission, the Director shall conduct an evaluation of the submitted plan, ordinances or regulations in order to advise the Commission whether or not they comply with the Statewide Planning Goals. The results of this evaluation shall be set forth in a written report. * * *"

contested cases "is not a hindrance to adapting administrative procedures more closely tailored to the needs of different agencies. * * *."[12]

However, the question before us is not whether there is sufficient flexibility in the APA, or in the APA combined with ORS ch 197, to permit the acknowledgment procedures LCDC now follows. We express no view on those procedures. The question before us is the scope of this court's review of an LCDC acknowledgment decision.

## II

Regardless of the extent of LCDC's discretion to tailor acknowledgment procedures to its unique situation, there is no room for flexibility when it comes to judicial review. Under the APA as it is now written, this court has no choice but to review under the broader contested case standard (which includes substantial evidence review) or under the narrower rulemaking standard (which does not include substantial evidence review).

The question is one of legislative intent, but there are only limited indications of that intent. Moreover, either contested case review or rulemaking review of an acknowledgment decision seems like trying to put a round peg into a square hole. We nevertheless conclude that the stronger indications are that the legislature more likely intended contested case review of acknowledgment decisions.

When the LCDC statute was enacted in 1973, there was no provision for LCDC acknowledgment of local comprehensive plans. Instead, comparable review authority was given to each county.[13] Four years later two inter-

---

[12] Robinson, *The Making of Administrative Policy: Another Look at Rulemaking and Adjudication and Administrative Procedure Reform,* 118 U Pa L Rev 485, 536 (1970).

[13] The original 1973 statute is still in effect, codified as ORS 197.255:

"Following the approval by the commission of state-wide planning goals and guidelines, each county governing body shall review all comprehensive plans for land conservation and development within the county, both those adopted and those being prepared. The county governing body shall advise the state agency, city, county or special district preparing the comprehensive plans whether or not the comprehensive plans are in conformity with the state-wide planning goals."

It is not clear what the continued import of this statute is in light of the subsequent expansion of LCDC authority to include issuing acknowledgment orders.

related statutes were enacted, Oregon Laws 1977, ch 766, § 18, and Oregon Laws 1977, ch 664, § 34. The former, codified as ORS 197.251, creates LCDC authority to issue acknowledgment orders; the latter, codified as ORS 197.320, creates LCDC authority to issue enforcement orders.

ORS 197.251 provides in part:

"Upon request by a city or county the commission may grant:

"(1)   A compliance acknowledgment which shall be an official order of the commission formally recognizing that the comprehensive plans or zoning, subdivision or other ordinances or regulations adopted by the city or county are in compliance with the state-wide planning goals. The commission shall evaluate the plan and ordinances and either grant or deny the request within 90 days of the date the request was received by the commission unless the commission finds that due to extenuating circumstances a specified period of time greater than 90 days is required to take action on a request for a compliance acknowledgment. The commission's order granting or denying a request for compliance acknowledgment shall include a clear statement of findings which set forth the basis for the approval or denial of the request. * * *"

Nothing in the balance of this statute expressly provides for judicial review of acknowledgment orders which, of course, creates the present problem of trying to plug judicial review into the general classifications of the APA.

The first indication of legislative intent is the wording of the above-quoted part of ORS 197.251. Acknowledgment is *"an official order"* of LCDC. (Emphasis supplied.) This points toward this court being intended to have something other than a rulemaking scope of review. Furthermore, such an official order is required to "include a clear statement of *findings* which set forth the basis for the approval or denial of" acknowledgment. (Emphasis supplied.) A general requirement of "findings" points toward a contested case scope of review, unless we indulge in the unlikely assumption that the legislature

required findings that it did not want to be judicially reviewable for support by substantial evidence.[14]

The strongest indication of legislative intent arises from the interrelationship of the two 1977 amendments. Under ORS 197.251, enacted in 1977, in addition to acknowledgment orders, LCDC may issue "denial orders" and "extension orders" that require a local government to take certain actions to bring its comprehensive plan and implementing ordinances into compliance with the statewide planning goals. Under ORS 197.320, also enacted in 1977, LCDC may issue enforcement orders. There are certain differences between the legal consequences of denial, extension and enforcement orders, but for present purposes we find substantial functional similarity: All those types of orders inform a city or county that LCDC does not consider its local land use laws to comply with state requirements, and all require corrective action by the local government.[15]

As previously noted, ORS ch 197 is silent on the means and scope of judicial review of an acknowledgment or denial order issued pursuant to ORS 197.251. There is, however, no ambiguity about judicial review of an *enforcement* order:

---

[14] In some situations, findings are required as part of rulemaking. *Kids Against the Cut v. Wage and Hour Comm.,* 41 Or App 179, 597 P2d 1264 (1979). In that case, it was clear from the statute in question that the agency was engaged in rulemaking; and the finding that was required before the agency could adopt a certain rule was specifically stated in the statute. Here, by contrast, it is unclear from the statute whether the agency is engaged in rulemaking; and no particular finding is specifically required, but only "findings" generally.

[15] Enforcement orders are required to state:

"(a) The nature of the noncompliance, including but not limited to the contents of the comprehensive plan, zoning, subdivision or other ordinance or regulation, if any, of a city or county that do not comply with state-wide planning goals or the contents of a plan, program or regulation affecting land use adopted by a state agency or special district that do not comply with state-wide planning goals;

"(b) The specific lands, if any, within a city or county for which the existing plan, ordinance or regulation, if any, do not comply with the state-wide goals; and

"(c) The corrective action decided upon by the commission, including the specific requirements, with which the city, county, state agency or special district must comply." ORS 197.320(2).

"* * * The [LCDC] hearing and judicial review of a final [enforcement] order shall be governed by the provisions of ORS 183.310 to 183.500 *applicable to contested cases* except as otherwise stated in this section. * * * Where a petition to review the [enforcement] order has been filed in the Court of Appeals, the commission shall transmit to the court the entire administrative record of the proceeding under review. * * * The court shall reverse * * * if it finds * * * [t]he order is not supported by substantial evidence in the whole record." ORS 197.320(3)(d). (Emphasis supplied.)

Given our conclusion that an ORS 197.251 denial order and an ORS 197.320 enforcement order are functionally the same and given an express statutory statement that an ORS 197.320 enforcement order shall be judicially reviewed as a contested case, including review of the "entire administrative record" for "substantial evidence," we think it far more likely the legislature intended the same method and scope of judicial review for an ORS 197.251 denial order. We believe it further follows that the legislature intended the same scope of review of an ORS 197.251 *acknowledgment* order as it did of an ORS 197.251 *denial* order — or at least no reason has been suggested or occurs to us for the legislature intending different scopes of review for affirmative and negative decisions in a single type of proceeding.

The final indication of legislative intent comes from the 1979 statute that abolished the writ of review in land use cases and created the Land Use Board of Appeals. That statute confers jurisdiction to review LUBA's decisions upon the Court of Appeals. Oregon Laws 1979, ch 772, § 6a(3). As for the scope of review, that statute first exempts LUBA decisions from all of the judicial review provisions of the APA:

"Notwithstanding the provisions of ORS 183.480 to 183.500, judicial review of orders issued under sections 4 to 6 of this 1979 Act shall be solely as provided in this section." Oregon Laws 1979, ch 772, § 6a(2).

But the same section then proceeds to create the possibility of review for substantial evidence:

"* * * The court shall reverse or remand the [LUBA] order only if it finds:

"* * * * *

"(c) The order is not supported by substantial evidence in the whole record." Oregon Laws 1979, ch 772, § 6a(8).

In sum, a single group of interrelated statutes creates the possibility of three different types of appeals to this court: (1) from acknowledgment or denial orders; (2) from enforcement orders; and (3) from LUBA decisions. Substantial-evidence review is expressly available in the latter two contexts. We therefore conclude, despite legislative silence, that the more likely intended scope of review in appeals from acknowledgment and denial orders also would include the possibility of substantial evidence review.

## III

We have resolved the question of our scope of review on the basis of deducing the most likely legislative intent from the scheme of ORS ch 197 and related statutes. The parties have advanced several other contentions which we will note.

As previously quoted, the APA's definition of a contested case includes proceedings before an agency where the agency provides for hearings "substantially of the character" required by the APA for contested cases. ORS 183.310(2)(a)(D). It is suggested that LCDC's rules governing the acknowledgment process create procedures substantially similar to statutory contested case procedures. We disagree. There may be some similarities between the statutory procedures and those LCDC has created, but there are not substantial similarities. Statutory contested case procedures include the opportunity for discovery, subpenas, sworn testimony and cross-examination. None of that is provided for in LCDC's procedural rules for acknowledgment proceedings.

It is also suggested that acknowledgment proceedings are contested cases within the meaning of ORS 183.310(2)(a)(A), that is, proceedings in which "the individual legal rights, duties or privileges of specific parties are required *by statute* * * * to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard." (Emphasis supplied.) Admittedly, the acknowledgment statute, ORS 197.251, does not

expressly provide that there are specific parties to an acknowledgment proceeding or that there is any right to be heard. LCDC relies upon this statutory silence to argue that even the local government requesting acknowledgment is not a "party" to an acknowledgment proceeding and has no statutory right to be heard. This means, if we understand LCDC's argument correctly, LCDC is taking the rather extreme position that it could deny a requesting local government acknowledgment without any opportunity for any representative of the local government to be heard by LCDC.

We strongly doubt that the legislature could have so intended, and therefore lean to the view that implicit in ORS 197.251 is a statutory right for local governments to be heard by LCDC on their acknowledgment requests.[16] Acknowledgment is the capstone in the state-mandated planning program. Before acknowledgment, the state goals apply to individual local land use actions. *Alexanderson v. Polk County Commissioners,* 289 Or 427, 616 P2d 459 (1980). After acknowledgment, the state goals generally do not apply to individual land use actions.[17] Given the importance of acknowledgment to cities and counties, it is hard to believe that the legislature intended that their requests for acknowledgment could be denied without any right to be heard.

However, we need not and do not here resolve that question. We are concerned, frankly, that if we hold that acknowledgment is a contested case within the meaning of ORS 183.310(2)(a)(A), somebody will soon be contending that it necessarily follows that all of the statutory contested case procedures like discovery, subpena, sworn testimony and cross-examination are applicable to acknowledgments. We previously suggested and here repeat that — in this process of trying to put a round peg in a square hole —

---

[16] A "person" within the meaning of the APA includes a "governmental subdivision." ORS 183.310(6).

[17] ORS 197.275(2): "After the commission acknowledges a city or county comprehensive plan to be in compliance with the goals pursuant to ORS chapter 197 and any subsequent amendments to the goals, the goals shall apply to land conservation and development actions and annexations only through the acknowledged comprehensive plan and implementing ordinances * * *."

it would seem more desirable to find sufficient flexibility to enable acknowledgments to be conducted with less of a courtroom atmosphere.

As a separate point, all parties rely upon various passages from the Supreme Court's opinion in *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979). One aspect of the dispute is whether acknowledgment involves the articulation of policy or the application of existing policy to particular facts. We think acknowledgment falls toward the latter end of the spectrum — the application of existing policy (the statewide planning goals) to particular facts (the situation in the individual city or county that has requested acknowledgment). True, as LCDC points out, in one acknowledgment proceeding it can interpret the state goals in a given manner, thereby making the applicable policy more specific and creating a precedent for future similar acknowledgment requests. However, the legislature has specifically recognized that administrative agencies will fill policy interstices in the course of adjudicating individual cases.[18] This does not convert adjudication into rulemaking.

The other aspect of the dispute about the proper application of *Strawberry Hill* is whether an acknowledgment decision is addressed to a relatively large or relatively small number of persons. LCDC argues that its acknowledgment decisions have an impact on everybody who lives in the city or county that has requested acknowledgment — and presumably on everybody who would move to that city or county during the planning period. We think this misses the point. The direct and immediate impact of an acknowledgment decision is *only* on the local government that has requested acknowledgment, *i.e.,* the decision is usually addressed to the smallest possible number of persons — one. There may well be indirect consequences for people living in or moving to the planning area, just as there are indirect consequences for many people if a nuclear power

---

[18] ORS 183.355(5) provides in part:

"* * * if an agency, in disposing of a contested case, announces in its decision the adoption of a general policy applicable to such case and subsequent cases of like nature the agency may rely upon such decision in disposition of later cases."

plant is built,[19] or if a major shopping center is built.[20] This does not convert adjudication into rulemaking.

Finally, we note an issue that seems to be lurking in the background: the issue of trying to provide some degree of stability and finality in the land use planning process. Those who argue acknowledgment is a type of administrative rule in order to limit judicial review would sacrifice, consciously or not, most stability. Administrative rules can be amended or repealed at any time.[21] Therefore, if we held that acknowledgment orders were rules, a local government that had obtained an acknowledgment order from LCDC would have no guarantee that it would not be "repealed" the next day or changed daily. We think it is safe to assume that local governments would desire and the legislature intended that there be greater finality to an acknowledgment decision.

Motions to dismiss denied.

---

[19] *See Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977).

[20] *See Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977).

[21] ORS 183.390: "An interested person may petition an agency requesting the promulgation, amendment or repeal of a rule. * * * Not later than 30 days after the date of submission of a petition, the agency either shall deny the petition in writing or shall initiate rulemaking proceedings * * *."