# SOUTH OF SUNNYSIDE NEIGHBORHOOD LEAGUE et al, *Petitioners,*

*v.*

# BOARD OF COMMISSIONERS OF CLACKAMAS COUNTY et al, *Respondents.*

## (No. 91837, SC 25232)

569 P2d 1063

[ 4-a ]

[ 4-b ]

[ 4-c ]

Stephen T. Janik, Portland, argued the cause for petitioners. With him on the briefs were Clarence R. Wicks, Gregory R. Mowe and Davies, Biggs, Strayer, Stoel & Boley, Portland, for petitoners First Union Real Estate Equity and Mortgage Investment and First Union Management Co., Inc., dba First Union Shopping Centers Co., Lawrence Russell Lucas, Jr., Portland, for petitoners Oregon Environmental Council and Northwest Environmental Defense Center, and Louis J. Fasano, Portland, for petitioners South of Sunnyside Neighborhood League, Thomas M. and Florence Baggs, Vance A. and Patricia J. Higdon, Charles M. and Sharon L. Foidel; Fred R. and Wilma J. Heyne, Scott L. and Kitty Freeman, Frank H. and Valerie J. Temple.

Theodore B. Jensen, of Jensen, DeFrancq, Holmes & Schulte, Portland, argued the cause for respondents Ernest W. Hahn, Inc., The Coldwell Banker Fund, Broadway-Hale Properties, Inc. (or Carter Hawley Hale Properties, Inc.). With him on the brief was Alan K. Brickley, Portland.

Scott H. Parker, Assistant District Attorney, Oregon City, argued the cause for respondents Board of Commissioners of Clackamas County, Oregon, and its members, Thomas D. Telford, Robert Schumacher, Stan Skoko, Clackamas County Planning Commission, and its members, Daniel Baer, George Lyons,

Una Schmidt, John Dodd, Peter McDonald, Fred Wickersham, David McMinn and Gerald Rothenfluch. On the brief were Roger H. Rook, District Attorney, and Richard F. Christ, Deputy District Attorney, Oregon City.

Robert E. Stacey, Jr., Portland, filed a brief amicus curiae behalf of 1,000 Friends of Oregon.

DENECKE, C. J.

**DENECKE, C. J.**

This is a writ of review proceeding in which petitioners have contended that the Clackamas County Board of Commissioners acted improperly in approving a proposed amendment to the county's comprehensive plan. The amendment in question changes the designation of a 65-acre parcel on the plan map from "medium density planned residential" to "planned commercial." The proponent of the change wants to develop an extensive shopping center and hotel complex on the tract in question together with an adjacent 50 acres which is already designated "planned commercial" on the map. The proposed development is referred to as the Clackamas Town Center and is shown on the map on the following page.

The trial court affirmed the Board's order of amendment and the Court of Appeals affirmed. 27 Or App 647, 557 P2d 1375 (1976), reconsideration denied 28 Or App 281, 559 P2d 512 (1977). We granted review, primarily to consider the question of the standards applicable to single-tract comprehensive plan amendments.

Before proceeding to that question, however, we will decide some secondary issues raised by the petition for review.

Petitioners contend that the county Board of Commissioners did not have jurisdiction to consider the proposed amendment. This contention is based on the requirement, found in the amendment procedures contained in the plan itself, that planning commission recommendations on proposed plan amendments be concurred in by five members of the commission. Petitioners argue that one of the five votes cast in favor of this amendment by planning commission members could not be counted because one of the commissioners had not heard or had an opportunity to review a substantial portion of the evidence.

[ 5 ]

The Court of Appeals held that the Board had jurisdiction to act, even if it be assumed that there were not five valid votes cast by members of the planning commission. The court reasoned that under the applicable statutes[1] it is the county governing body, not the planning commission, which has the authority to make land use decisions, and that its jurisdiction to act could not, therefore, be conditioned on prior planning commission action. Petitioners contend that the Court of Appeals erred in relying solely on the Board's statutory authority, and in failing to consider their argument that the Board, having adopted procedural rules which required planning commission action as a condition precedent to Board action, was required to follow those rules.

We do not find petitioners argument persuasive. The amendment procedures adopted by the Board appear to contemplate that proposed amendments will normally be considered first by the planning commission.[2] Nothing in those procedures, however, expressly

---

[1] The court cited and relied on ORS 215.020 and ORS 197.190(1).

[2] Those procedures, in their entirety, are as follows:

AMENDMENTS

"It will be necessary to amend and update this Comprehensive Plan in limited areas. These amendments are to be considered major changes and shall be reviewed at legal public hearings.

"Amendments to the Comprehensive Plan shall be made pursuant to the following procedure:

"An amendment may be initiated by a private individual, a community, neighborhood, or the County.

"Upon consideration of a proposed amendment, the overall area shall be considered and not just an individual parcel.

"Prior to the Planning Commission hearing the matter, the Comprehensive Plan Committee of the Planning Commission shall review the proposal and make a report to the total Planning Commission on the matter.

"At the public hearings before the Planning Commission, the Committee's report shall be considered. It shall take five (5) members of the Planning Commission, voting in favor of the proposal, to recommend to the Board of County Commissioners that the Plan be amended.

"If the proposal involves a map change, all property owners within

makes planning commission action a necessary prerequisite to consideration by the Board. In light of the statutory provision that the "county governing body shall adopt and may from time to time revise a comprehensive plan * * *,"[3] we are unwilling to imply such a prerequisite. Rather, we read the plan as prescribing the procedures necessary to valid planning commission action, but not as requiring such action before the Board may consider a plan amendment.

■ In a supplementary memorandum submitted at the time of oral argument, petitioners argue for the first time that the Board's jurisdiction is conditioned by statute upon prior planning commission action. ORS 215.110(3) provides that when the county governing body initiates action on certain "ordinances intended to carry out part or all of the comprehensive plan" it is to request a report and recommendation from the planning commission, and to allow a reasonable time for submission of the report and recommendation. Assuming, without deciding, that the statute applies to amendments to the plan as well as to zoning and other ordinances designed to "carry out" the plan, it does not support petitioners' position. In the present case, the action on the proposed amendment was

_____

two hundred and fifty (250) feet of the requested change will be notified of the hearing date and the requested amendment. The Comprehensive Plan Committee of the Planning Commission may extend this distance if the proposed change has an impact on a larger area.

"If the proposed amendment is to be a text change, the proposal shall be considered by the Comprehensive Plan Committee of the Planning Commission which shall report its findings to the total Planning Commission. The Planning Commission shall consider the matter, after proper public notice, at a regularly scheduled public hearing.

"The Planning Commission shall only consider amendments to the Comprehensive Plan once each quarter at regularly advertised hearings.

"The Planning Commission shall only consider a Comprehensive Plan change for a particular area once in any calendar year. This may be waived by majority action of the Commission."

[3] ORS 215.050.

initiated in the planning commission, not by the Board. ORS 215.110(3) does not, therefore, apply. Even so, its evident purpose was fulfilled. The statute only requires, in the circumstances to which it applies, that the commission be requested to furnish a report and recommendation and that it have an opportunity—a "reasonable time"—to submit them.

The planning commission undertook to consider this amendment upon the filing of the application. Petitioners have not contended that the commission did not have a reasonable time within which to act. Although we have assumed, for present purposes, that the commission's recommendation was invalid, there is no question but that the commission's views on the proposed amendment were solicited and that it had an opportunity to present those views to the Board before the Board itself took action.

■ Petitioners also argue that the provisions of ORS 215.402-215.422, which provide for hearings and review in contested land use cases, require that action by either a hearings officer or the planning commission precede action by the Board on a quasi-judicial plan change. We do not agree. ORS 215.406 provides that, in the absence of a hearings officer, either the planning commission or the governing body may serve as the forum for a contested case hearing. Here, the Board itself held a full hearing. It did not purport to simply review the planning commission's action.[4]

In summary, we find that by taking action on the proposed amendment, the Board did not violate either its own announced procedures or the procedures required by statute. As the county's governing body, it had jurisdiction both to consider the proposal and to take action upon it.

■■ Petitioners also contend that the proceedings before

---

[4]Although the planning commission proceedings were placed in evidence before the Board, the Board expressly stated in its order that it was not relying on the recommendation of the planning commission.

the Board were improper, and its order of amendment invalid, because the Board did not provide an opportunity for cross-examination of witnesses. Although conceding that there is apparently authority to the contrary (see, e.g., 27 ALR3d 1304), the Court of Appeals held that petitioners had been given sufficient opportunity to raise issues and to rebut the proponent's evidence, and that the "minimum requirements of procedural due process" were satisfied.

We do not reach the merits of this issue because we do not believe it was properly raised. At the beginning of the public hearing before the Board, the general format for the hearing was announced. It did not include any provision for cross-examination of witnesses. Neither then nor at any other time during the hearing did petitioners or any other opponents of the amendment object to the hearing format or request permission to cross-examine any of the proponent's witnesses. We cannot assume that if such a request had been made it would necessarily have been denied.

Petitioners were represented by counsel. Under these circumstances they may not await the Board's decision and then, when they discover it is not to their liking, argue that the entire hearing was inadequate because they were not accorded the opportunity, which they never requested, to cross-examine the proponent's witnesses. *Cf. Neeley v. Compensation Department,* 246 Or 522, 525, 426 P2d 460 (1967); 2 Cooper, State Administrative Law, 598. The Court of Appeals need not have considered this question. We indicate no opinion on the merits of the issue, but hold that the question was not properly before the Court of Appeals or this court for review.

We turn now to the central problem in this case,— the substantive standards or criteria by which an amendment to the comprehensive plan is to be tested. We begin by observing that the decision to amend the comprehensive plan as it applies to this single parcel of land is a quasi-judicial, rather than a legislative,

decision. It does not involve the adoption of general policy, but rather the application of existing general standards, which we discuss below, to a specific piece of property.[5] The proponents of the change bear the burden of proof on the issue of its justification. *Fasano v. Washington Co. Comm.,* 264 Or 574, 586, 507 P2d 23 (1973). The question is what kind of justification need be shown.

The case was presented and argued below on the assumption that the appropriate standards were those we adopted in *Fasano* which were summarized in our opinion in that case as follows:

"* * * it must be proved that the change is in conformance with the comprehensive plan.

"In proving that the change is in conformance with the comprehensive plan in this case, the proof, at a minimum, should show (1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared with other available property." 264 Or at 583-584.

---

[5]The property in question is a single compact tract of land under the ownership or control of a single developer. Our references in this opinion to "single tract" or "single parcel" amendments are convenient ways of describing the type and scale of land-use decisions which we have treated as quasi-judicial. *See,* e.g., *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973) (zone change on 32 acres under single ownership); *Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976) (zone change on one 50-acre tract owned by proponent of change and adjacent 90-acre tract upon which proponent held option to purchase); *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977) (annexation of 141 acres owned by four individuals who planned a coordinated development). *Compare Culver v. Dagg,* 20 Or App 647, 532 P2d 1127 (1957) (rezoning of more than half of county; land under diverse ownership); *Parelius v. Lake Oswego,* 22 Or App 429, 539 P2d 1123 (1975) (rezoning of 73 acres consisting of more than 25 parcels in diverse ownership); *Joyce v. City of Portland,* 24 Or App 689, 546 P2d 1100 (1976) (rezoning of 842 acres owned by at least "several dozen" individuals). We do not intend, by the use of the terms "single tract" and "single parcel" to adopt a test for determining when a given land-use decision is quasi-judicial rather than legislative. A number of factors such as the size of the area affected in relation to the area in the planning unit, the number of landowners affected, and the kinds of standards governing the decision-makers may be relevant. The decision with which we are now concerned is clearly quasi-judicial, and we find it unnecessary to formulate, in the present case, a test for making that determination.

*Fasano* involved an amendment to the zoning ordinance. The rationale underlying our holding that the change in the ordinance must be in conformance with the plan was that the legislature had conditioned the county's power to zone upon the proper exercise of its planning responsibilities.

The present case does not involve an amendment to the zoning ordinance, but to the comprehensive plan itself. The Court of Appeals, taking note of this distinction, held:

> "* * * In the context of a plan change, the applicable legal standard is prescribed by statute in the form of planning goals. *See* ORS 197.280 and ORS 215.515. The board applied the proper legal standard if it considered and complied with, insofar as they were relevant, the [comprehensive planning goals set forth in ORS 215.515]." (Footnote omitted.) 27 Or App at 653.

The court stated the applicable test as follows:

> "* * * Compliance is achieved if local governments can adequately demonstrate that an amendment results in a plan which considers and accommodates as much as possible all applicable planning goals. Cf. ORS 197.015(4)." (Footnote omitted.) 27 Or App at 654.

It also held, with certain qualifications, that *Fasano's* two-part test of a showing of public need and the best means of serving that need did not operate independently of the statewide planning goals. However, it also held that the Board's finding was that there is a public need for a town center, the proposed development, and this was the most desirable location for the development.

■ Petitioners contend that the Court of Appeals was in error in holding that the standards which we adopted in *Fasano* have no independent application in the context of a plan change like this one. In support of the petition for review, amicus curiae, 1,000 Friends of Oregon, urged that the applicable statewide planning goals were not those prescribed by ORS 215.515, but those adopted by the Land Conservation and Develop-

[ 12 ]

ment Commission (LCDC). We requested additional briefing and oral argument on both of these questions.

The *Fasano* standards, which were formulated with reference to quasi-judicial amendments to zoning ordinances, are not, of course, directly applicable to comprehensive plan amendments. They were derived from the zoning statutes. The central test—whether the change is in conformance with the plan—cannot be strictly satisfied when the change is to the plan itself rather than to an implementing measure. Nevertheless, where, as here, the change is a single-tract amendment to the plan map alone, and no changes in the plan's policies and goals are involved, we think the legislature has imposed substantially the same requirement. ORS 197.015(4) provides in part:

> " 'Comprehensive plan' means a generalized, coordinated land use map and policy statement of the governing body of a state agency, city, county or special district that inter-relates all functional and natural systems and activities relating to the use of lands * * *. A plan is 'coordinated' when the needs of all levels of governments, semi-public and private agencies and the citizens of Oregon have been considered and accommodated as much as possible * * *."

In order for a comprehensive plan to be coordinated and interrelated as required by the statute, its land use maps must be consistent with the applicable textual provisions, which normally take the form of goals and policy statements. When it is proposed to change the plan by changing the permitted use of a single parcel of land, the legislative requirement th at a comprehensive plan be coordinated and interrelated includes, we believe, a requirement that the amendment to the map be consistent with the unamended portions of the plan. Conformance with the applicable textual goals and policies, which will normally be designed to guide future change and development, is particularly important.

Like the requirement that a change of zone comply with the plan, the other portions of the *Fasano*

[ 13 ]

test—the requirement of a showing of public need for change and that the change under consideration is the best way of meeting that need—also had their genesis in the statutory pattern. In our opinion in that case we examined the statutory requirement of a comprehensive plan, and we quoted ORS 215.055(1) which listed the considerations upon which planning efforts were to be based. All of those considerations have to do with the characteristics and the welfare of the community at large. When we held that a single-tract zone change must be shown to meet a public need, and to be the best way of meeting that need, we were requiring only what was implicit in the legislation governing planning and zoning: that land use decisions made at the instance of a private party be made only for reasons having to do with the needs and welfare of the community at large rather than for the accommodation of individual landowners or private developers. These concerns are just as applicable to single-tract plan map amendments as they are to changes in zoning ordinances.

The creation of the Land Conservation and Development Commission, and the powers given to it to set statewide planning goals and to review the actions of local governments and other agencies for compliance with those goals, provide additional evidence of the legislative intent that public concerns are to guide the practice of planning and zoning. The 1977 amendments to the planning laws make it clear that the LCDC review process was not intended to be exclusive.[6] In short, the requirement that public concerns govern quasi-judicial land-use decisions is applicable to plan amendments as well as to zoning amendments.

The goals and policies expressed in the plan are not, of course, the only standards to which an amendment to the comprehensive plan map must conform. As the Court of Appeals noted, the county's comprehensive

---

[6] Oregon Laws 1977, ch 664, § 2.

[ 14 ]

plan is required by statute to comply with the applicable statewide planning goals. We consider below which set of statewide goals are applicable to the amendment under consideration here. But we note that both the statutory goals which are set out in the footnote[7] and the LCDC goals, which are too long to reproduce in full in this opinion, are directed primarily to the overall planning process. With some few exceptions, they are not designed to guide decisions about the permissible uses of particular pieces of property. The comprehensive plan is expected to provide that guidance.

Since the overall compliance of the plan with the applicable goals is required by statute, an amendment to the plan map which complies with the plan's goals and policies can be assumed to comply with the applicable statewide goals insofar as they speak to the formulation of an overall plan. Insofar as the relevant goals contain no specific directives or prohibitions

---

[7] "* * * Goals for comprehensive planning are:

"(a) To preserve the quality of the air, water and land resources of the state.

"(b) To conserve open space and protect natural and scenic resources.

"(c) To provide for the recreational needs of citizens of the state and visitors.

"(d) To conserve prime farm lands for the production of crops.

"(e) To provide for an orderly and efficient transition from rural to urban land use.

"(f) To protect life and property in areas subject to floods, landslides and other natural disasters.

"(g) To provide and encourage a safe, convenient and economic transportation system including all modes of transportation: Air, water, rail, highway and mass transit, and recognizing differences in the social costs in the various modes of transportation.

"(h) To develop a timely, orderly and efficient arrangement of public facilities and services to serve as a framework for urban and rural development.

"(i) To diversify and improve the economy of the state.

"(j) To ensure that the development of properties within the state is commensurate with the character and the physical limitations of the land.

"* * * * *." ORS 215.515

[ 15 ]

intended to govern the decision under consideration, we see no need to test the entire plan for compliance with all of them each time the plan map is amended to change the permissible use of a single parcel. It will be enough to show that such a change is consistent with the overall design of the plan itself.

Such an amendment cannot also, however, be assumed to comply with any provisions of the statewide planning goals which specifically govern the kind of decision under consideration. As to such goal provisions, if applicable, compliance must be shown by the proponent of the plan amendment.[8]

Against this general background, we turn to the question of which statewide goals are applicable to the plan amendment at issue in this case. The Court of Appeals assumed that the statutory goals set out in ORS 215.515(1) applied. The court did not, however, have the benefit of briefs and argument on that issue.

In response to our request for additional briefing on this question, both petitioners and amicus curiae have provided us with thorough analyses of the statutes involved. We conclude, upon examination of these statutes, that the goals applicable to this comprehensive plan amendment are those adopted by LCDC.

---

[8]For example, the LCDC goal on agricultural land provides, in part:

"* * * Conversion of rural agricultural land to urbanizable land shall be based upon consideration of the following factors: * * *."

The county would clearly be required, when considering a plan change involving the conversion of agricultural land to urbanizable land, to consider the factors which are listed in the goal.

A second example is found in the LCDC goal on areas subject to natural disasters and hazards. That goal provides, in part:

"Developments subject to damage or that could result in loss of life shall not be planned nor [sic] located in known areas of natural disasters and hazards without appropriate safeguards. * * *."

A plan amendment which provided for hospital or school in an area of known high flood hazard would likely be prima facie in violation of this provision.

[ 16 ]

ORS 197.225, enacted in 1973, required LCDC to adopt, not later than January 1, 1975:

"* * * state-wide planning goals and guidelines for use by state agencies, cities, counties and special districts in preparing, adopting, *revising* and implementing *existing* and future comprehensive plans." (Emphasis added.)

LCDC adopted its statewide goals on December 27, 1974, with an "operative date" of January 1, 1975.

Since 1969, however, ORS 215.515 had contained a list of planning goals to which county comprehensive plans were required to conform. In 1973, at the time LCDC was created and was directed to prepare new statewide planning goals, ORS 197.280 was enacted. It provides:

"*Prior to approval* by [LCDC] of its statewide planning goals and guidelines * * * the goals listed in ORS 215.515 shall be applied by state agencies, cities, counties and special districts in the preparation, *revision,* adoption or implementation of any comprehensive plan." (Emphasis added.)

Because the comprehensive plan amendment involved in this case was adopted in March, 1975, after the operative date of the LCDC goals, those goals would clearly be applicable under the provisions of the statutes which we have quoted above. However, some question arises because of ORS 197.250, which provides:

"All comprehensive plans and any zoning, subdivision and other ordinances and regulations adopted by a state agency, city, county, or special district to carry out such plans shall be in conformity with the state-wide planning goals within one year from the date such goals are approved by the commission."

Because the plan as a whole is not required to be in conformity with the new statewide goals until one year from the date of their approval by LCDC, defendants have argued that it is the statutory interim goals, rather than the LCDC goals, which govern plan amendments during that year. We do not agree.

[ 17 ]

ORS 197.250 does not mention amendments to plans or other specific planning actions. The one-year period which it provides is clearly intended as a time during which the affected agencies and local governments are to be working to bring their comprehensive plans and implementing ordinances into conformity with the new goals. The end of that year is a deadline for completion of the entire study and revision process.[9] The statute does not provide that the LCDC goals are without effect for the first year after their approval, but only that total conformity of the entire comprehensive plan and all implementing measures is not required until the end of that time. It would be unreasonable to hold that during the very period when the county is supposed to be preparing the revisions necessary to bring its comprehensive plan into full compliance with the LCDC goals, those goals have no application to plan amendments which the county actually adopts. The clear implication of ORS 197.280 is that the LCDC goals become effective, and shall be applied in the amendment of comprehensive plans, upon their approval by LCDC.

We hold, in summary, that when a comprehensive plan map is amended to change the permissible use of a single tract of land, without any change in the plan's underlying policies, the proponent of the change has the burden of proving that the change in the plan map is consistent with the goals and policies expressed in the plan as a whole and that the change does not violate the specific provisions of any applicable statewide planning goal. We further hold that the statewide planning goals applicable to this amendment are those adopted by LCDC as of January 1, 1975.

Petitioners also contend that the amendment was invalid because it was made without adequate consid-

---

[9] ORS 197.325(2) provides for an extension of the deadline under certain circumstances.

eration of the overall area. The comprehensive plan provides, in the section on amendments:

"Upon consideration of a proposed amendment, the overall area shall be considered and not just an individual parcel."

The plan also provides, in the textual discussion of commercial areas:

"When development or expansion of a commercial area is proposed, there shall be a survey of the surrounding area to determine the proposal's impact on the area. Consideration should include a showing that a need exists and the impact upon the traffic pattern, both vehicular and pedestrian, should be analyzed."

The proponent of the plan change provided a consultant's study which examined the impact on the area in the context of the need for such a development, the economic effect on existing business centers, and the demands which the expanded commercial development would make on the transportation system. There was also considerable testimony concerning the impact of the proposed enlarged development. Petitioners' real argument is not that no attention was given to these matters, but that no additional adjustments in the plan were made at the same time to deal with them.

While it might have been better practice for the county to make, at the same time, any additional changes in the plan which the present amendment would foreseeably necessitate, we know of no requirement that related plan adjustments or revisions must all be made at once. Neither the statutes nor the plan itself contain such a requirement, or any language from which it may be reasonably inferred. The Board had before it ample evidence, from both proponents and opponents of the change, of the impact on the surrounding area. If it took that impact into consideration in making its decision, it did all that was required.

This brings us to the final issue in the case— whether the Board's findings were adequate to support

its decision. The findings are set out in full in the Court of Appeals' opinion, 27 Or App at 657-659. Although we test them against different standards, we find them as troublesome as did the court below.

In *Roseta v. County of Washington,* 254 Or 161, 170, 458 P2d 405, 40 ALR3d 364 (1969), we pointed out that we "cannot properly exercise our function of judicial review without a record of adequate findings * * *." In *Fasano, supra* (264 Or at 588), we reiterated that in a quasi-judicial land-use proceeding, adequate findings were necessary. In *Green v. Hayward,* 275 Or 693, 706-708, 552 P2d 815 (1976), we discussed at some length the reasons for the requirement of findings of fact and a reasoned decision, and quoted with approval the following from *The Home Plate, Inc. v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1975):

> "If there is to be any meaningful judicial scrutiny of the activities of an administrative agency—not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has not acted arbitrarily or on an ad hoc basis—we must require that its order clearly and precisely state what it found to be the facts and fully explain why those facts lead it to the decision it makes. Brevity is not always a virtue. * * *."

In *Green,* because the hearing on the zone change had taken place shortly after the publication of *Fasano* and the governing body had had little opportunity to become familiar with the procedural requirements of a quasi-judicial decision process, we undertook, in spite of the absence of adequate findings and reasons, to examine the record to determine whether the evidence would support the order. We indicated, however, that we were unwilling to make this a practice. 275 Or at 705-706.

It is true, as the Court of Appeals observed, that *Green* had not been decided at the time of the Board proceedings which we are now reviewing. We do not

believe, however, that that fact justifies our overlooking the requirement of adequate findings which had been clearly stated in both *Roseta* and *Fasano. Green* elaborated somewhat on that requirement, and pointed out the need for a statement of reasons as well. Its references to findings of fact were not, however, an innovation.

We wish to make it clear that by insisting on adequate findings of fact we are not simply imposing legalistic notions of proper form, or setting an empty exercise for local governments to follow. No particular form is required, and no magic words need be employed. What is needed for adequate judicial review is a clear statement of what, specifically, the decision-making body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient.

We do not believe the requirement of adequate findings and reasons imposes an excessive burden on the governing body or its staff. In contested land-use proceedings involving significant changes and the presentation of large amounts of conflicting evidence, the major proponents and opponents of the change will frequently be represented by counsel. In such cases it would be quite proper for the governing body to request the parties to prepare and submit proposed findings which could be reviewed and used, as appropriate, in preparing its own final order.

We proceed, then, to an examination of the findings of fact in the present case. The Board addressed the issue of compliance with the unamended portion of the comprehensive plan in the following findings:

"2. The proposed request complies with the goals and policies of the Comprehensive Plan in that:

"A. It provides the designated commercial lands of sufficient size to serve the needs of North Clackamas County and the southeast Portland region;

[ 21 ]

"B. Provides, incentives for orderly development of the area as designated in the Comprehensive Plan;

"C. Discourages the further expansion of highway commercial or strip commercial development in the area.

"D. Meets the criteria for the location of a commercial development that will best serve a vast area, that being Service District No. 1, the Tri-County Service District area and surrounding areas;

"E. The overall area which is made up of various parcels of land has been considered in this proposal."

These findings are incomplete and conclusory. There is no indication, for example, of the facts upon which the Board relied to determine the regional needs for any particular quantity of commercial lands. Although the findings recite that the amendment meets the criteria for the location of a commercial development which will serve a particular area, they are silent as to what those criteria are or in what way they have been met. The findings state that the overall area has been considered, but do not indicate how it would be affected or what impacts on the surrounding area were taken into account. Finding No. 7, which also speaks to the impact on the surrounding area, adds nothing helpful:

"The overall benefits to the community and surrounding area significantly outweighs [sic] any adverse impact on the surrounding area."

Findings like those we have quoted do not provide an adequate basis for judicial review. Judicial review on those terms would be likely to be either an empty formality or a substitution of the court's judgment for that of the proper decision-making body. Even apart from judicial review, they do not assure the identification of criteria and the attention to factual assumptions that is one of the main functions of findings.

Findings are important only insofar as they relate to the objectives and policies to which the planning government is committed by its plan or by state law, goals or guidelines. Consequently findings must make clear what these objectives or policies are as applied in

the concrete situation. Thereafter, findings must describe how or why the proposed action will in fact serve these objectives or policies. We repeat that no particular, technical form of finding is required. Some findings may describe existing geographic or other physical facts, some may describe social or economic factors, some may be statistical information, some may be projections of expected future developments. For instance, a statement that traffic on a certain thoroughfare is increasing faster than had been anticipated, or that the number of children in a neighborhood is expected to decline, or that shopping habits are changing, if these things are properly established, would be findings on the basis of which a planning body might then conclude, and explain, that certain amendments are compatible with the governing policies. Another example of findings of sufficient specificity is stated in *Green v. Hayward, supra* (275 Or at 704-408). We set out the minimum standards for a portion of the Comprehensive Plan and then stated findings, supportable by the evidence, that these standards were met.

What we have said is sufficient to demonstrate that the findings addressed to one of the criteria for change—compliance with the unamended portion of the plan—are inadequate. Most of the other findings are equally conclusory and we need not discuss them all in detail. As a whole, we find them to be inadequate to permit a proper review of the order of amendment to the plan map.

The matter must, therefore, be remanded to the Board for entry of a new findings of fact.

Reversed.