COLWELL et al,
*Petitioners,*

*v.*

WASHINGTON COUNTY et al,
*Respondents.*

(85-063; CA A38638)

718 P2d 747

Robert E. Stacey, Jr., Portland, argued the cause and filed the brief for petitioners.

Dan R. Olsen, Assistant County Counsel, Hillsboro, argued the cause and filed the brief for respondent Washington County.

No appearance for respondents Jim Allison, Harry Farr and Farr Bros., Inc.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Rossman, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's dismissal of their appeal from Washington County's amendment of its comprehensive plan to allow rural residential use of a 68-acre tract which was previously designated agricultural-forestry.

The amendment was initially approved by the county planning commission, after it conducted a quasi-judicial hearing. Petitioners filed an appeal to the county governing body within the time prescribed by the applicable ordinance for appeals from planning commission actions. However, they failed to perfect the appeal in the way required by the relevant county ordinance, and the governing body therefore dismissed the appeal without taking any action on the merits of the plan amendment. Petitioners then appealed to LUBA. It in turn dismissed that appeal on the ground that petitioners' failure adequately to pursue review by the governing body meant that they had not exhausted county remedies and that they therefore could not invoke LUBA's jurisdiction. ORS 197.825(2)(a). LUBA explained:

"* * * Petitioners say that ORS 215.050 and ORS 215.060 require county commission action to effectuate any change in the comprehensive plan. Because state law requires the governing body to act on any plan change, the Washington County Commission was obliged to hear the matter of this plan change, whether the appeal was timely filed or not.

"We reject petitioners' view. ORS 197.825(2)(a) provides that our jurisdiction

" 'is limited to those cases in which the petitioner has exhausted all remedies available by right before petitioning the board for review.'

"As noted, this provision requires a petitioner to exhaust all local avenues available to remedy an allegedly erroneous land use decision before asking for our review. In this case, the ordinance required petitioners to perfect an appeal of the planning commission decision to the Washington County Commission. This process was not followed. * * *" (Footnotes omitted.)

Petitioners now renew the argument that LUBA rejected. They state:

"LUBA's decision was unlawful in substance and requires reversal. Petitioners cannot be required by Washington

County to 'appeal' to the county governing body a decision which only the governing body has authority to make. The provision of ORS 197.825 requiring exhaustion of local remedies before appealing to LUBA does not require exhaustion of unlawful and unauthorized procedures.

"* * * * *

"The governing body, after receiving petitioners' request for hearing and action by the governing body * * * considered the request but chose not to act on it, instead requiring petitioners to continue with the 'appeal' procedures of the county's ordinance. It was only after receiving and considering petitioners' contention of violation of ORS 215.050 and 215.060 that the county governing body dismissed petitioners' appeal due to alleged late payment of the transcript fee balance. Having advised the county board once of their position that the board was required to hear and act on the plan amendment, petitioners were not obligated to 'try, try again' to persuade the governing body by following the county's appeal procedures."

The county's response is twofold. It argues, first, that governing body action is not required for a "small tract" amendment to a comprehensive plan and that a county may authorize its planning commission to adopt such an amendment, at least if it provides a mechanism for obtaining governing body review. Second, the county argues that, even if petitioners are correct concerning the requirement of governing body adoption of plan amendments,

"[c]ontrary to Petitioners' unsupported assertion, an allegation of 'unlawful and unauthorized procedures' does not authorize the Board, LUBA, or your court to ignore jurisdictional prerequisites. Such an exception quickly would gut the exhaustion requirement as clever petitioners learned to make such an allegation whenever they risked not perfecting an appeal. * * *

"* * * * *

"* * * Petitioners are required to follow local procedures even as they challenge them. To conclude otherwise would violate the statutory scheme by circumventing the local governing body and making LUBA or your court the initial decision-maker."

ORS 215.050(1) provides:

"*The county governing body* shall adopt and may from

time to time revise a comprehensive plan and zoning, subdivision and other ordinances applicable to all of the land in the county. The plan and related ordinances may be adopted and revised part by part or by geographic area." (Emphasis supplied.)

ORS 215.060 provides:

"Action by the governing body of a county regarding the plan shall have no legal effect unless the governing body first conducts one or more public hearings on the plan and unless 10 days' advance public notice of each of the hearings is published in a newspaper of general circulation in the county or, in case the plan as it is to be heard concerns only part of the county, is so published in the territory so concerned and unless a majority of the members of the governing body approves the action. The notice provisions of this section shall not restrict the giving of notice by other means, including mail, radio and television."

*See also* ORS 197.010(1) (comprehensive plan "[m]ust be adopted by the appropriate *governing body* at the local and state levels"); ORS 197.015(5) (" 'Comprehensive plan' means a generalized, coordinated land use map and policy statement of the *governing body* of a local government * * *"). (Emphasis supplied.)

The county nevertheless argues that final governing body action is not necessary for the adoption of small-tract plan or plan map *amendments* to which quasi-judicial procedural requirements apply. The county relies on *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978), where the court held, *inter alia,* that the governing body's adoption of the county's comprehensive plan by resolution rather than ordinance did not violate ORS 215.050 and that the plaintiff developer was required to exhaust remedies, by seeking a single tract comprehensive plan amendment from the county, before it could seek a judicial determination that the existing plan's prohibition of the desired development was arbitrary and capricious.

Neither of those holdings assists the county. The court did not say in *Fifth Avenue* that ORS 215.050 allows an entity other than the governing body to adopt or amend a comprehensive plan; it held only that ordinance formalities are not required in connection with the governing body's adoption of the plan. The disposition of the exhaustion of

remedies issue in *Fifth Avenue* also lends no support to the county's position here, because there is no similarity between the exhaustion issues in the two cases. The question in *Fifth Avenue* was whether the plaintiff had to pursue available county remedies before seeking judicial relief; the question here is whether the "remedy" the county maintains that petitioners did not exhaust is a remedy at all, in the sense of being a procedure which petitioners had to initiate rather than an action the governing body was required to undertake—with or without petitioners' involvement—to effect an amendment of the plan. The county also appears to regard *Fifth Avenue* as an across-the-board endorsement of its plan amendment procedures which, it argues, are the same in substance now as they were when *Fifth Avenue* was decided. The court in *Fifth Avenue* decided only the questions which were raised in that case; the questions about the county's procedures which concern us here were not issues in *Fifth Avenue.*

The county's more colorable argument is, in essence, that (1) a small-tract plan amendment requires quasi-judicial procedures, (2) the county may and has delegated the conduct of those procedures to the planning commission and, there-fore, (3) no legislative decision is involved and no action by the governing body is required. The two premises are correct, but the conclusion is not. In *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977), the court held that quasi-judicial requirements are applicable to the initial determination of whether a city's proposed "small tract" annexation satisfies the statewide land use planning goals. However, the court went on to note that

> "* * * the broader issues involved in reaching final deci-sions on whether the land proposed for annexation should, in fact, be annexed to the city, and at what point that action should be taken, may cloak those ultimate decisions with a character which is more legislative than judicial." 279 Or at 256.

We later held in *Stewart v. City of Corvallis,* 48 Or App 709, 617 P2d 921 (1980), *rev den* 290 Or 491 (1981), that the *final* decision on an annexation proposal could be made through a popular referendum rather than through a quasi-judicial pro-ceeding.

*Petersen* and *Stewart* illustrate that the necessity for

quasi-judicial procedures at one stage of a land use decision and the permissibility of or necessity for a "legislative" or policy determination at a different stage are not mutually exclusive.[1] In the small-tract annexation context, the question which must be resolved quasi-judicially is whether the action *may* be taken; the subsequent question of whether the action *will* be taken is generally a separate one to be decided through separate procedures. The analogous issue here is whether the relevant statutes require governing body enactment of a small-tract plan amendment which has been quasi-judicially approved by the planning commission, or whether the final adoption of the amendment can take place at the planning commission level.

Although ORS 215.050 refers to governing body adoption and revision of plans, and does not expressly mention amendments or small-tract amendments, we think that the legislature intended to encompass plan amendments in the adoption and revision responsibilities of governing bodies which the statute does prescribe. As the Supreme Court noted in *Fifth Avenue Corp. v. Washington Co., supra,* ORS 215.050 was amended by Or Laws 1973, ch 552, § 4, for the specific purpose of taking final authority over the promulgation of comprehensive plans away from planning commissions and placing it in county governing bodies. 282 Or at 596-97. We consider it highly unlikely that the legislature implicitly intended to leave the power to amend comprehensive plans in the hands of the very bodies from which the 1973 amendment expressly removed the authority to adopt them; more fundamentally, the scheme of the current statutes relating to comprehensive plans is at odds with the county's understanding that final authority over what they provide can reside in one body if the provisions are introduced as part of the initial adoption process or as part of a general revision and in a different body if the provision is enacted as a small-tract

---

[1] The distinction between those decisional stages has been blurred, and perhaps the notion of mutual exclusivity has been inadvertently fostered, in cases where the question was whether the local governing body erred by enacting a plan amendment legislatively, without following quasi-judicial procedures at any point. *See, e.g., Marggi v. Ruecker,* 20 Or App 669, 533 P2d 1372, *rev den* (1975). The line between the two stages is also difficult to discern, at least in terms of chronology, when the governing body is both the quasi-judicial and the legislative decision-maker.

amendment. ORS 197.015(5) makes it clear that "comprehensive planning" entails *detailed coordination* of all aspects of a planning jurisdiction's land use scheme. Like ORS 215.050 and 197.010(1), ORS 197.015(5) also makes it clear that it is the governing body which bears responsibility for the jurisdiction's comprehensive planning.

The case authority which comes the closest to being on point supports the conclusion that the governing body has final responsiblity for *any* action that affects the content of a comprehensive plan. The requirement that quasi-judicial procedures be followed in connection with small-tract plan amendments was announced in *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 569 P2d 1063 (1977):

> "The *Fasano* [*v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973)] standards, which were formulated with reference to quasi-judicial amendments to zoning ordinances, are not, of course, directly applicable to comprehensive plan amendments. They were derived from the zoning statutes. The central test—whether the change is in conformance with the plan—cannot be strictly satisfied when the change is to the plan itself rather than to an implementing measure. Nevertheless, where, as here, the change is a single-tract amendment to the plan map alone, and no changes in the plan's policies and goals are involved, we think the legislature has imposed substantially the same requirement. ORS 197.015(4) provides in part:
>
> > " ' "Comprehensive plan" means a generalized coordinated land use map and policy statement of the governing body of a state agency, city, county or special district that inter-relates all functional and natural systems and activities relating to the use of lands * * *. A plan is "coordinated" when the needs of all levels of governments, semi-public and private agencies and the citizens of Oregon have been considered and accommodated as much as possible * * *.'
>
> "In order for a comprehensive plan to be coordinated and interrelated as required by the statute, its land use maps must be consistent with the applicable textual provisions, which normally take the form of goals and policy statements. When it is proposed to change the plan by changing the permitted use of a single parcel of land, the legislative requirement that a comprehensive plan be coordinated and interrelated includes, we believe, a requirement that the amendment to the map be

consistent with the unamended portions of the plan. Conformance with the applicable textual goals and policies, which will normally be designated to guide future change and development, is particularly important.

"Like the requirement that a change of zone comply with the plan, the other portions of the *Fasano* test—the requirement of a showing of public need for change and that the change under consideration is the best way of meeting that need—also had their genesis in the statutory pattern. In our opinion in that case we examined the statutory requirement of a comprehensive plan, and we quoted ORS 215.055(2) which listed the considerations upon which planning efforts were to be based. All of those considerations have to do with the characteristics and the welfare of the community at large. When we held that a single-tract zone change must be shown to meet a public need, and to be the best way of meeting that need, we were requiring only what was implicit in the legislation governing planning and zoning: that land use decisions made at the instance of a private party be made only for reasons having to do with the needs and welfare of the community at large rather than for the accommodation of individual landowners or private developers. These concerns are just as applicable to single-tract plan map amendments as they are to changes in zoning ordinances.

"The creation of the Land Conservation and Development Commission, and the powers given to it to set statewide planning goals and to review the actions of local governments and other agencies for compliance with those goals, provide additional evidence of the legislative intent that public concerns are to guide the practice of planning and zoning. The 1977 amendments to the planning laws make it clear that the LCDC review process was not intended to be exclusive. In short, the requirement that public concerns govern quasi-judicial land-use decisions is applicable to plan amendments as well as to zoning amendments.

"The goals and policies expressed in the plan are not, of course, the only standards to which an amendment to the comprehensive plan map must conform. As the Court of Appeals noted, the county's comprehensive plan is required by statute to comply with the applicable statewide planning goals. * * *" 280 Or at 13-15. (Footnote omitted.)

*Sunnyside* makes it clear that, far from being mutually exclusive in the context of small-tract plan amendments, the public protections that quasi-judicial procedures promote

and the statutory comprehensive planning requirements are consistent and complementary. It is particularly noteworthy that, in rejecting the petitioners' argument based on defects in the proceedings before the planning commission, the court stated:

> "* * * The amendment procedures adopted by the [governing body] appear to contemplate that proposed amendments will normally be considered first by the planning commission. Nothing in those procedures, however, expressly makes planning commission action a necessary prerequisite to consideration by the Board. In light of the statutory provision that the 'county governing body shall adopt and may from time to time revise a comprehensive plan * * *,' we are unwilling to imply such a prerequisite. Rather, we read the plan as prescribing the procedures necessary to valid planning commission action, but not as requiring such action before the Board may consider a plan amendment." 280 Or at 7-8. (Footnotes omitted.)

■ ■ We conclude that, under ORS 215.050 and the relevant provisions of ORS chapter 197, small-tract plan amendments, like all other enactments and changes of comprehensive plans, must be adopted by the governing body of the planning jurisdiction. As noted above, the county argues and LUBA concluded that petitioners' failure to invoke governing body action in accordance with the county's procedural provisions nevertheless means that petitioners did not exhaust local remedies and cannot appeal to LUBA. The county's and LUBA's thesis seems to be that pursuing *all* procedures the county may make available is necessary to exhaust remedies, regardless of whether there is anything to be remedied by those procedures. We held in *Portland Audubon Society v. Clackamas Co.*, 77 Or App 277, 712 P2d 839 (1986), that it was not a jurisdictional prerequisite under ORS 197.825(2)(a) to seek reconsideration of a governing body decision before appealing to LUBA, although the county procedures permitted reconsideration to be sought. It was at least implicit in our reasoning in *Portland Audubon Society* that ORS 197.825(2)(a) does not require the pursuit of local remedies that are unlikely to serve any purpose except redundancy. The problem here is even more basic: petitioners' pursuit of the county remedies that they did not exhaust could have achieved nothing except convincing the governing body to do what ORS 215.050 and 215.060 already required it to do.

This is not a case like *Lyke v. Lane County,* 70 Or App 82, 688 P2d 411 (1984), where the petitioners chose to bypass the county governing body and appealed directly to LUBA from a hearings officer's decision allowing a zone change. Here, petitioners *did* file an appeal from the planning commission to the governing body and they followed the county procedures at least to the point that the governing body was apprised of the planning commission's action. Whether or not they even had to do that, they needed to do no more to require the governing body to perform its mandatory duty or to exhaust remedies for purposes of appealing to LUBA.

We do not understand petitioners to argue here that the governing body must do anything in connection with the plan amendment other than what ORS 215.050 and 215.060 require, as distinct from any additional or different governing body procedures that may be provided for by county legislation. This opinion does not address whether petitioners are entitled to avail themselves of any such procedures. In any event, the contours of any remand to the county are for LUBA to define on reconsideration.

Reversed and remanded for reconsideration.[2]

---

[2] We emphasize that this opinion is concerned with the county procedures only as they purport to apply to comprehensive plan amendments.