Argued and submitted December 21, 2004, reversed and remanded on petition; affirmed on cross-petition March 16, 2005

SISTERS FOREST PLANNING COMMITTEE,
*Petitioner - Cross-Respondent,*

*v.*

DESCHUTES COUNTY,
*Respondent - Cross-Petitioner.*

2004-073; A126559

108 P3d 1175

Paul Dewey argued the cause and filed the briefs for petitioner - cross-respondent.

Peter Livingston argued the cause for respondent - cross-petitioner. With him on the briefs were Laurie E. Craghead and Schwabe, Williamson & Wyatt, P.C.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

The Land Use Board of Appeals (LUBA) affirmed in part, reversed in part, and remanded to Deschutes County the county's approval of a conditional use permit to build a dwelling on a 320-acre tract of forest land. Sisters Forest Planning Committee (petitioner) seeks review, challenging, among other things, LUBA's determination that the county had imposed sufficiently "clear and objective" fire prevention and suppression conditions. The county cross-petitions for review, arguing that LUBA erred in remanding the matter for further consideration of certain other Deschutes County Code (DCC) requirements. As discussed below, we conclude that LUBA erred in determining that the county's fire prevention and suppression conditions were adequate. We conclude, however, that LUBA was correct in remanding to the county for further consideration of the other relevant code requirements. We therefore reverse on the petition, affirm on the cross-petition, and remand.

The basic facts are not in dispute; we take them from LUBA's opinion.

"The subject property is located approximately three miles northwest of the westernmost edge of the City of Bend's urban growth boundary. The property is approximately 320 acres in size and is zoned Forest Management (F-1). The property is also in a Wildlife Area Combining Zone due to its location within the Tumalo Deer Winter Range. The property is currently unoccupied and has no structures. The property is forested and was most recently logged in 1992 and 2002. The topography of the property is varied and includes a small canyon with steep slopes. Sisters Mainline Road, a major Forest Service Road running between Bend and Sisters, runs along the southern and western boundaries of the property. The property is surrounded by other unoccupied forestlands. Upon receipt of the application, the county made an administrative decision rather than refer the case directly to the hearings officer. The application was approved without a hearing, and the decision was appealed to the hearings officer. The hearings officer also approved the application. Petitioner appealed the hearings officer's decision to the Board of

County Commissioners (BCC), but the BCC declined to review the hearings officer's decision."

Before LUBA, petitioner challenged the county's conditions of approval. The conditions were based in large part on a January 25, 2004, letter from the applicant's expert, John Jackson, which contained several recommendations pertaining to fire prevention and suppression. In approving the application, the county imposed as a condition that the applicant "implement all of the recommendations" in Jackson's letter. Petitioner argued that the recommendations in the letter were so vague, imprecise, and hortatory that they could not function as legally sufficient conditions of approval.

LUBA treated petitioner's challenge as though it posited a general requirement that conditions of approval be "clear and objective" and concluded that no such legal requirement was applicable here. *Cf.* ORS 197.307(3)(b) (requiring approval standards for certain types of housing within urban growth boundaries to be "clear and objective"); ORS 197.685 (requiring approval standards for farmworker housing to be "clear and objective"); ORS 215.296(2) (requiring conditions imposed in context of approval of certain uses in exclusive farm use zones to be "clear and objective"). LUBA cautioned that a condition of approval "may be drafted so poorly that it may be inadequate to ensure compliance with an applicable approval standard it has been imposed to address" and that the better practice would have been to set out specific recommendations adopted from Jackson's letter rather than simply to refer to the letter in its entirety. LUBA concluded, however, that the recommendations in the letter were sufficiently clear to suffice as conditions of approval.

■ On judicial review, petitioner acknowledges that there are statutorily imposed requirements for "clear and objective" conditions of approval in only a few contexts. It argues, however, that the same specificity and clarity that the Supreme Court found necessary for findings in *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 21, 569 P2d 1063 (1977), should also be required for

conditions imposed in order to satisfy permit approval criteria.[1] Petitioner complains that the vagueness of many of the statements in Jackson's letter, as well as the difficulty in determining which portions of the letter are recommendations and which are analysis or mere commentary, make it impossible to determine precisely what the letter, and thus the county's imposed conditions, require. Petitioner also specifically challenges a recommendation to treat the five- to ten-acre triangle around the proposed residence for hazardous fuels, on the ground that the recommendation involves adjoining properties and that it therefore is uncertain that the applicant will be able to implement it. The county responds that conditions need not be stated with the specificity required for findings and that the conditions imposed here—including those set out as recommendations in Jackson's letter and incorporated into the hearings officer's decision—are adequately stated.

We generally agree with petitioner that specificity and clarity are desirable to ensure that the imposed conditions are properly understood not only by the entity responsible for complying with them but also by potential challengers of a permit subject to conditions. Adequate specificity and clarity promote the proper application of relevant land use criteria and proper administration of the permit; conversely, they assist in avoiding unnecessary challenges to land use

---

[1] In *Sunnyside Neighborhood*, the court addressed the level of detail in findings necessary in order for the court to fulfill its review function:

"We wish to make it clear that by insisting on adequate findings of fact we are not simply imposing legalistic notions of proper form, or setting an empty exercise for local governments to follow. No particular form is required, and no magic words need be employed. What is needed for adequate judicial review is a clear statement of what, specifically, the decisionmaking body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient.

"We do not believe the requirement of adequate findings and reasons imposes an excessive burden on the governing body or its staff. In contested land-use proceedings involving significant changes and the presentation of large amounts of conflicting evidence, the major proponents and opponents of the change will frequently be represented by counsel. In such cases it would be quite proper for the governing body to request the parties to prepare and submit proposed findings which could be reviewed and used, as appropriate, in preparing its own final order."

280 Or at 21.

decisions. With that general view in mind, we turn to the fire prevention and suppression conditions imposed here.

The county hearings officer's decision approving the permit relied on two separate documents addressing fire prevention and suppression: the county planning department's administrative decision and Jackson's letter. The hearings officer stated that approval was

> **"SUBJECT TO THE FOLLOWING CONDITION OF APPROVAL IN ADDITION TO THE CONDITIONS OF APPROVAL INCLUDED IN THE ADMINISTRATIVE DECISION:**
>
> "1. The applicant/owner shall implement all of the recommendations contained in the letter from John Jackson dated January 25, 2004, and included in the record as the applicant's Exhibit 101. In the event there is a conflict between Mr. Jackson's recommendations and the conditions of approval included in the administrative decision, Mr. Jackson's recommendations shall control."

The conditions in the administrative decision are stated succinctly and in terms responsive to specific county ordinance sections addressing fire siting standards. For example, DCC 18.36.070(B)(1) through (3) require a primary firebreak of not less than 10 feet wide containing nonflammable materials; a secondary firebreak of not less than 20 feet outside the primary firebreak; and a fuel break extending a minimum of 100 feet in all directions around the secondary firebreak.[2] The provision includes examples of materials and vegetation that are permissible in those control

---

[2] DCC 18.36.070(B)(1) to (3) provide:

"1. Primary Firebreak. Prior to use, owners of dwellings and structures shall construct a primary firebreak, not less than 10 feet wide, containing nonflammable materials. This may include lawn, walkways, driveways, gravel borders or other similar materials.

"2. Secondary Firebreak. Owners of the dwellings and structures shall construct a secondary firebreak of not less than 20 feet outside the primary firebreak. This firebreak need not be bare ground, but can include a lawn, ornamental shrubbery or individual or groups of trees separated by a distance equal to the diameter of the crowns adjacent to each other, or 15 feet, whichever is greater. All trees shall be pruned to at least eight feet in height. Dead fuels shall be removed.

"3. Fuel Break. Owners of the dwellings and structures shall maintain a fuel break extending a minimum of 100 feet in all directions around the secondary firebreak. Individual and groups of trees within the fuel break shall be

areas. In a detailed condition of approval, the county's administrative decision clearly requires the applicant to establish those types of fire and fuel breaks.

In contrast, although Jackson's letter discusses in detail the conceptual and factual underpinnings of Jackson's recommended fuels management and fire prevention strategies for the site, it is less precise when setting out recommendations for particular fire prevention measures on the property. For example, as to fire suppression concerns, the letter does not state the exact areas or features to which certain recommended measures are applicable and does not explain which recommendations are intended to address county-imposed requirements. Similarly, under the letter's recommendations for structure location, the letter merely states that "the building site should be set back from the rim rock area above the railroad grade an *adequate distance* so that any fire burning in that vicinity will not subject the structure to high heat levels from convection column." (Emphasis added.) The recommendation further refers to standards "of SB 360 for fire-safe landscaping options to be applied in the first 150 feet around buildings," again without clarifying whether that recommendation modifies the more precisely stated firebreak conditions in the county administrative decision. The matter is further clouded by the remainder of the paragraph, which states only that care should be used in selecting appropriate fire resistant landscaping plants and that the applicant should

> "[s]trongly consider the benefit of applying [the SB 360] standards to the greatest extent possible consistent with reasonable aesthetic considerations. Manage vegetation with the intent to reduce potential sources of radia[nt], convective or conductive heat to the building to the lowest possible level."

Thus, the recommendation arguably suggests that aesthetic considerations can supersede fire safety ones.

---

separated by a distance equal to the diameter of the crowns adjacent to each other, or 15 feet, whichever is greater. Small trees and brush growing underneath larger trees shall be removed to prevent spread of fire up into the crowns of the larger trees. All trees shall be pruned to at least eight feet in height. Dead fuels shall be removed. The fuel break shall be completed prior to the beginning of the coming fire season."

Also of significance, Jackson's letter recommends that, in addition to the initial fuels management plan associated with the building site and access routes, the applicant develop a hazardous fuels management plan for the entire property and coordinate "similar efforts with adjoining landowners." The letter states that such a program of coordination "can be defined and implemented through Forest Stewardship Plan for the property which is approved by [the Oregon Department of Forestry]." However, our review of the county's decision does not disclose the existence of an Oregon Department of Forestry Forest Stewardship Plan. On its face, therefore, the recommendation appears to be of uncertain enforceability.

As a final example, the letter also includes a recommendation to "[u]tilize fire resistant building materials to the greatest extent possible" including the "use of a fire resistant roof * * *." In contrast, the county administrative decision includes a structural standard stating that all dwellings and structures "shall use noncombustible or fire resistant roofing materials. This means roofing material identified as Class A, B or C in the Oregon Uniform Building Code. Roof sprinklers are not an acceptable alternative to this standard." DCC 18.36.070(E)(1). The hearings officer's directive to use Jackson's recommendations where they conflict with the county administrative decision appears potentially to allow the applicant to avoid the more precise standard in DCC 18.36.070(E)(1), possibly resulting in a violation of the county's code.

Although it is not entirely clear, we understand that the county hearings officer decided to treat Jackson's "recommendations" as mandatory. The use of the quoted term to describe an action required of an applicant is not objectionable if its context makes it clear that the recommendation is a requirement.

Other difficulties remain in this case, however. First, as discussed above, it appears that some of the recommendations in the letter may conflict with the approval conditions in the county's administrative decision and with the county's development code. For another example, it is uncertain whether Jackson's recommendation that the applicant

"[mow] brush to reduce flame length of ground fire to less than two feet during peak fire danger periods" conforms with the precisely stated standards for firebreaks in DCC 18.36.070—that such firebreaks be not less than 10 feet wide and that they contain nonflammable materials such as "lawn, walkways, driveways, gravel borders or other similar materials." In addition, several of Jackson's recommendations (including, apparently, the one pertaining to off-site improvements) appear to give the applicant discretion in implementing them, giving rise to further concern as to compliance with the county's conditions and its code.

In short, petitioner is correct that some of the recommendations in Jackson's letter are too imprecise or hypothetical to serve as conditions of approval. Others, particularly when considered in light of the conditions contained in the county's administrative decision, are confusing or are not in apparent conformity with the county's own stated conditions or its ordinances. It may be that the applicant could implement Jackson's recommendations in a manner consistent with the county's own stated conditions and its code. On its face, however, the county's decision is inadequate for the reasons described.

In its second assignment of error, petitioner asserts that LUBA erred in concluding that it need not make feasibility findings as to the imposed conditions. Because we are remanding for clarification of the conditions, we do not address that contention. We reject without discussion petitioner's third assignment of error, which challenges LUBA's assessment of the adequacy of the county's analysis of increased fire suppression costs.

■    We turn briefly to the county's cross-petition, in which it argues that LUBA erred in remanding the matter for further consideration under DCC 18.36.060. That code provision requires the county to consider certain matters relevant to the siting of a new dwelling or structure. In particular, the ordinance requires that a dwelling be sited so that it "[h]as the least impact on nearby or adjacent lands zoned for forest or agricultural use." DCC 18.36.060(A). LUBA found, among other deficiencies in the county's approval under this provision, that the county had failed to make a comparison

between the applicant's preferred dwelling site and other potential locations. LUBA opined that the

> "requirement to identify the location that 'least impacts' nearby resource operations and that 'minimizes' various adverse impacts and risks necessarily entails a demonstration and some discussion of why the preferred location is, on balance, equal or superior to other potential locations on the property in those respects."

We agree that the county's assessment in that regard was deficient for the reasons described by LUBA.

Reversed and remanded on petition; affirmed on cross-petition.